The **GREAT-WEST LIFE ASSURANCE COMPANY**

v.

The **UNITED STATES.**

No. 114-79T.

United States Court of Claims.

May 5, 1982.

---

**181**

Edward J. Schmuck, Washington, D. C., attorney of record, for plaintiff. James V. Heffernan, Jeffery P. Capron and Sutherland, Asbill & Brennan, Washington, D. C., of counsel.

Bruce W. Reynolds, Washington, D. C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D. C., for defendant. Theodore D. Peyser, Washington, D. C., of counsel.

Before KASHIWA, KUNZIG * and SMITH, Judges.

KASHIWA, Judge:

This case is before the court on the parties' cross motions for summary judgment. After hearing oral argument, we allow defendant summary judgment.

There are no issues of material fact, as the parties have stipulated thereto. Plaintiff is a life insurance company organized under the laws of Canada and licensed to do business by 44 states and the District of Columbia. Plaintiff reserves, as it must under various state regulations, a portion of its assets in trusteed accounts within the United States. Included among the assets in the trusteed accounts are numerous bonds of, and certificates of deposit with, various Canadian borrowers. The Canadian borrowers fall generally into the following categories: (1) the Government of Canada or its political subdivisions; (2) corporations owned by the Government of Canada or its political subdivisions; (3) public utilities (which may be either publicly held or owned by a governmental body); (4) various other publicly held corporations; and (5) public and private banks from which plaintiff held short-term certificates of deposit.

Plaintiff received $1,446,683.05 in 1967, $1,687,112.45 in 1968, and $1,928,606.37 in 1969 as interest from these Canadian borrowers. For those taxable years, plaintiff determined this interest was "effectively connected" with its United States life insurance business and subject to tax as "gross investment income" under 26 U.S.C. (Internal Revenue Code of 1954, hereafter I.R.C. or Code) § 804(b)(1).[1] Plaintiff so reported the interest and paid the relevant tax.

Subsequently, plaintiff concluded that Article XII, as amended, of the Double Tax Convention Between the United States and Canada exempted this interest from all United States tax. Plaintiff timely filed refund claims for the 1967, 1968, and 1969 tax years; this suit ultimately followed. As the parties agree the interest paid plaintiff on the trusteed obligations is otherwise taxable under I.R.C. § 804(b)(1), the primary[2] issue presented herein is whether

* Judge Robert L. Kunzig participated in the oral argument and agreed to the determination in this case before his death on February 21, 1982.

1. Under I.R.C. § 842, foreign corporations conducting an insurance business within the United States are taxed, as to all income "effectively connected" with that business, under the same Code provisions as their domestic counterparts. See also I.R.C. § 864(c)(4)(C). Domestic life insurance companies are taxed pursuant to I.R.C. §§ 801–820.

2. We briefly note two additional contentions of defendant. First, defendant argues that even if Article XII would otherwise exempt this particular interest, the Revenue Act of 1942, ch. 619, 56 Stat. 798 (1942), implicitly repealed Article XII as to Canadian corporations conducting United States life insurance operations. At oral argument, however, defendant confessed error as to this contention, noting that a "sav-

Article XII exempts that Canadian corporate interest. If not, plaintiff's suit must fail.

## I.

Canada and the United States first entered a treaty concerning income taxes in 1937. *See* Income Tax Convention and Protocol Between Canada and the United States, August 13, 1937, 50 Stat. 1399, T. S. No. 920. That treaty was terminated on April 30, 1941, and contained no provision relating to interest. A second treaty, the Double Taxation Convention Between the United States and Canada, June 15, 1942, 56 Stat. 1399, T. S. No. 983, included a provision relating to interest:

### ARTICLE XII

Dividends and interest paid on or after the effective date of this Convention by a corporation organized under the laws of Canada to individual residents of Canada, other than citizens of the United States of America, or to corporations organized under the laws of Canada shall be exempt from all income taxes imposed by the United States of America.

In 1951, the second treaty was amended by the Supplemental Convention on Double Taxation Between the United States and Canada, November 21, 1951, 2 U.S.T. 2235, T.I.A.S. No. 2347. Following amendment, Article XII read:

### ARTICLE XII

1. Dividends and interest paid by a corporation organized under the laws of Canada to a recipient, other than a citizen or resident of the United States of America or a corporation organized under the laws of the United States of America, shall be exempt from all income taxes imposed by the United States of America.

2. Dividends and interest paid by a corporation organized under the laws of the United States of America whose business is not managed and controlled in Canada to a recipient, other than a resident of Canada or a corporation whose business is managed and controlled in Canada, shall be exempt from all taxes imposed by Canada.[3] [Footnote omitted.]

Despite later modification to other provisions of the treaty, Article XII as amended in 1951 continued in effect during the tax years here in question.

## II.

■ The parties have stipulated that each of the literal requirements of Article XII have been met: the amounts at issue received by Great-West are "interest"; each item of interest was paid by "a corporation organized under the laws of Canada";[4] and the recipient of interest (*i.e.,* plaintiff) is neither "a citizen or resident of the United States of America"[5] nor "a cor-

---

ings clause" within the Revenue Act of 1942 mandated that inconsistent treaty provisions not be overridden. Second, defendant argues that if Article XII exempts Canadian corporate interest paid plaintiff on its trusteed assets, some of the interest plaintiff seeks to exempt was paid by noncorporate debtors, *e.g.,* the Dominion of Canada, and cannot be exempted by Article XII. To this extent, defendant seeks to withdraw from the joint stipulation of facts on which the case was argued. *See also* note 4, *infra,* and accompanying text.

In light of our conclusion, *infra,* that Article XII only waives the taxes imposed through the deemed sourcing provisions on Canadian corporate interest paid to those not present in the United States, we need not, and expressly do not, reach this other contention by defendant.

3. As plaintiff does not argue there is a substantive difference between original Article XII and paragraph one of Article XII following the 1951 amendments, subsequent references to Article XII may indicate either version, as appropriate. *See also* note 14, *infra.*

4. *But see* the second issue discussed in note 2, *supra.*

5. It might be argued that plaintiff, a foreign corporation carrying on a business within the United States, is a United States resident. *See, e.g.,* Treas.Reg. § 1.861–2(a)(2); Treas.Reg. § 301.7701–5. *See also* I.R.C. § 861(a)(1) (flush language). The identical concept was embodied in § 231(b) of the Internal Revenue Code of 1939, ch. 2, 53 Stat. 1 (1939) (cited hereafter as 1939 I.R.C.), as amended by § 160(d) of the Revenue Act of 1942, *supra*

poration organized under the laws of the United States." The inquiry, however, does not stop there, for the courts have long recognized treaties must be construed so as to enforce the intent of the contracting parties. As the Supreme Court said:

> * * * It is a canon of interpretation to so construe a law or a treaty as to give effect to the object designed, and for that purpose all of its provisions must be examined in the light of attendant and surrounding circumstances. * * * The inquiry in all such cases is as to what was intended in the law by the legislature, and in the treaty by the contracting parties. [*In re Ross*, 140 U.S. 453, 475, 11 S.Ct. 897, 904, 35 L.Ed. 581 (1891).]

See *Factor v. Laubenheimer*, 290 U.S. 276, 294–295, 54 S.Ct. 191, 196, 78 L.Ed. 315 (1933). The actual language employed is of considerable relevance. But other factors,

> * * * such as the court's sense of the conditions that existed when the language of the provision was adopted, its awareness of the mischief the provision was meant to remedy, and the [treaty] history available to it, * * * may lead the court to conclude that the language of

the provision only imperfectly manifests its purpose, * * *. [*Reed v. Wiser*, 555 F.2d 1079, 1088 (2d Cir. 1977), *citing Eck v. United Arab Airlines, Inc.*, 360 F.2d 804, 812 (2d Cir. 1966).]

Where that is so, *Ross* and its progeny require that the underlying purpose be given effect. Thus,

> * * * [i]n determining whether the taxpayer in a given case is protected by the terms of a treaty, * * * "it is necessary to examine not only the language, but the entire context of agreement." [*Johansson v. United States*, 336 F.2d 809, 813 (5th Cir. 1964); [6] citations omitted.]

We discuss briefly that context.

### III.

The determination of where income is derived or "sourced" is generally of no moment to either United States citizens or United States corporations, for such persons are subject to tax under I.R.C. § 1 and I.R.C. § 11, respectively, on their worldwide income. Likewise, the income of a resident alien individual is taxed under I.R.C. § 1 without regard to source.[7] For nonresident

---

note 2. That status would preclude plaintiff from meeting the literal requirements of Article XII. Defendant does not make such an argument, no doubt based on the Canadian treaty as a whole and on the original version of Article XII, which seem to limit the term "resident" to individuals. *See also Conventions with South Africa, New Zealand, Norway, Ireland, Greece, and Canada on Double Taxation, Hearings Before a Subcommittee of the Senate Foreign Relations Committee*, 82d Cong., 1st Sess. 9 (1951) (letter from Canadian Undersecretary of State Heeney), *reprinted in* 1 Joint Comm. on Int.Rev.Tax., 87th Cong., 1st Sess., Legislative History of United States Tax Conventions, at 517 (1962).

For simplicity's sake, we cite subsequently to the former work as Hearings on Double Tax Convention, *supra* this note, and to the latter as 1 Legislative History, *supra* this note.

6. *Johansson v. United States, supra*, in which an incorporated prize fighter was held not to be a Swiss resident for purposes of Article X(1)(a) of the Swiss tax treaty, is by no means the only other federal appellate decision interpreting a tax convention. *See, e.g., Maximov v. United States*, 299 F.2d 565 (2d Cir. 1962), *aff'd*, 373 U.S. 49, 83 S.Ct. 1054, 10 L.Ed.2d 184 (1963) (a Connecticut trust with British beneficiaries was

not a British resident for purposes of the United Kingdom tax treaty, *infra* note 19); *United States v. A. L. Burbank & Co.*, 525 F.2d 9 (2d Cir. 1975), *cert. denied*, 426 U.S. 934, 96 S.Ct. 2647, 49 L.Ed.2d 386 (1976) (purposes of the Canadian treaty allow the I.R.S. to utilize I.R.C. § 7602 summons power to aid Canadian tax investigation); *United States v. VETCO Inc.*, 644 F.2d 1324 (9th Cir.), *cert. denied*, —— U.S. ——, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981) (nothing in the Swiss tax treaty precludes I.R.S. summons to obtain records from the Swiss subsidiary of a United States corporation). *See also* 3 B. Bittker, Federal Taxation of Income, Estates and Gifts ¶ 66.8 at 66–16—66–22 (1981), and cases cited therein.

7. Code § 1 purports to tax "every * * * individual" and "every estate and trust," presumably worldwide. Similarly, the tax imposed by Code § 11 extends to "every corporation." It is only by establishing separate tax regimes for nonresident aliens (including foreign fiduciaries), and foreign corporations that sections 1 and 11, respectively, do not apply. Thus, alien individuals resident in the United States, for whom there is no separate scheme of taxation, are taxed within the section 1 framework. *See also* Treas.Reg. § 1.1(b); Treas.Reg. § 1.871–1(a).

aliens and foreign corporations, however, the sourcing of income is of critical importance.[8]

Since 1921,[9] the United States has had provisions in its tax laws deeming interest and dividends paid by certain foreign corporations as United States source income, unless only a very low percentage of the payor's total income could be associated with the United States.[10]

Absent the provisions, such payments arguably would be sourced outside the United States by virtue of the payor's foreign incorporation. In that circumstance the United States, like most other nations, would generally tax such extranational income only when paid to those clearly within the United States taxing jurisdiction: United States citizens, alien individuals resident in the United States, and United States corporations.[11] *See* note 8, *supra*, and accompanying text. Deeming such extrana-

tional income to be sourced *within* the United States, on the other hand, subjects the recipient, *regardless of citizenship, residence, or incorporation*, to a United States tax. *See* notes 11 and 8, *supra*. Few sovereign nations other than the United States take such an expansive view of their jurisdiction to tax and not surprisingly, other nations have thought the deemed sourcing provisions controversial. This difference in view is more than academic, for the collection of a United States tax on such extranational income is unlikely without cooperation from the nation in which the payor is incorporated or in which the recipient may be found. Moreover, in an extreme form, such controversy could impair the exchange of information necessary to collect a United States tax on extranational income paid to those clearly within the United States' taxing jurisdiction. With these considerations

8. In general, a bifurcated taxing pattern applies to both nonresident alien individuals and foreign corporations. As to their income not "effectively connected with" a United States business, only that sourced in the United States and specified in I.R.C. § 871(a) (individuals) or I.R.C. § 881(a) (corporations) is taxed. Such income is reduced by only limited deductions before a flat tax of 30 percent is imposed. *See* I.R.C. § 873(b) (individuals) and I.R.C. § 882(c)(1)(B) (corporations).

A separate tax structure applies to the nonresident alien individual's or foreign corporation's income that is "effectively connected with" a United States business as defined in I.R.C. § 864(c). Such income, as reduced by allocable deductions, generally is taxed pursuant to I.R.C. § 1 or I.R.C. § 11 as if earned by a United States citizen or United States corporation, respectively. *See* I.R.C. § 871(b) (individuals) and I.R.C. § 882 (corporations).

9. These *deemed sourcing* provisions originated in § 217(a)(1) and (2) of the Revenue Act of 1921, ch. 136, 42 Stat. 227 (1921), and continued in § 217(a)(1) and (2) of the Revenue Act of 1924, ch. 234, 43 Stat. 253 (1924), and the Revenue Act of 1926, ch. 27, 44 Stat. 9 (1926), and in § 119(a)(1) and (2) of the Revenue Act of 1928, ch. 852, 45 Stat. 791 (1928), the Revenue Act of 1932, ch. 209, 47 Stat. 169 (1932), the Revenue Act of 1934, ch. 277, 48 Stat. 680 (1934), the Revenue Act of 1936, ch. 690, 49 Stat. 1648 (1936), and the Revenue Act of 1938, ch. 289, 52 Stat. 447 (1938).

The deeming provisions were codified in § 119(a)(1) and (2) of the 1939 I.R.C., as amended by § 160(c) of the Revenue Act of

1942, *supra* note 2. The present codifications are in I.R.C. § 861(a)(1) and (2).

10. Interest paid by a foreign corporation presently will be United States sourced if 50 or more percent of the payor's gross income is "effectively connected with the conduct of a United States business." I.R.C. § 861(a)(1)(C).

Formerly, interest paid by a foreign corporation resident in the United States (*see* note 5, *supra*) would be United States sourced if 20 or more percent of the payor's gross income was from United States sources. *See, e.g.*, 1939 I.R.C. § 119(a)(1)(B).

11. Conceptually, only these can be said to derive benefit from United States laws with regard to their entire income. Foreign corporations conducting United States operations present conceptual difficulties, for often those corporations derive benefit from United States laws with regard to only a portion of their worldwide income. With this in mind, foreign corporations with United States operations, while subject to tax on most United States-sourced income connected with that enterprise, are subject in only limited circumstances to a United States tax on effectively connected income not sourced in the United States. *See, e.g.*, I.R.C. § 864(c)(4)(A). One of the notable exceptions is the taxation of foreign corporations with United States life insurance operations. Those corporations are taxed on their worldwide income effectively connected with their United States operations. *See* I.R.C. § 864(c)(4)(C). *See also* note 1, *supra*.

in mind, the United States has occasionally agreed in its bilateral tax treaties to waive the United States taxes otherwise applicable through the deemed sourcing provisions.

That Article XII of the Canadian treaty constitutes one such waiver of taxation is clear from the Report by the Senate Committee on Foreign Relations, which accompanied the original treaty during ratification:

> Under the existing law, if [interest or] a dividend is paid to a Canadian corporation, a withholding tax is collected when such [interest or] dividend is paid to the Canadian corporation. In addition, when the Canadian corporation pays [interest or] a dividend to its Canadian [debt holders or] shareholders, such [interest or] dividend is also subject to the United States income tax if the Canadian corporation derives more than [a certain percentage] of its gross income from United States sources. Both from a legal as well as a practical standpoint the authority to levy and collect such a tax from the Canadian [debt holder or] shareholder has been questioned. The collection of such a tax is extremely doubtful, since the Canadian [debt holder or] shareholder may have no property situated within the United States. Under Article XII, the convention contemplate[s] waiving such a tax in the case of Canadian residents * *. Since Canada does not tax United States citizens on [interest or] dividends paid by United States corporations regardless of the percentage of gross income derived by such corporations from Canadian sources, reciprocity will be established by this treatment. Moreover, a system of information at the source will be established, whereby the United States will receive information from Canada as to persons receiving interest and dividends

and other fixed income from Canada. [S. Exec. Rep. No. 3, 77th Cong., 2d Sess. 6 (1942), *reprinted in* 1 Legislative History, *supra* note 5, at 460.]

The other major document accompanying the 1942 treaty during Senate ratification, the transmittal letter from Acting Secretary of State Sumner Welles, is in accord. *See* S.Exec.Doc. B, 77th Cong., 2d Sess. 2–4 (1942), *reprinted in* 1 Legislative History, *supra* note 5, at 446–448.

We turn to the parties' arguments.

## IV.

Defendant argues that the *only* purpose of Article XII was to waive all United States taxation on Canadian corporate interest and dividends paid to those not present in the United States if that taxation would be based solely on the deemed sourcing provisions. In reply, plaintiff apparently concedes a purpose of Article XII was to waive the taxes imposed through the deeming provisions on such income when paid to those not present in the United States.[12] Plaintiff continues, though, that Article XII had other purposes as well. It was to reflect all such purposes, plaintiff says, that Article XII's broad operative phrase "exempt from all income taxes" was chosen. The result, plaintiff's argument finishes, is a complete exemption for Canadian corporate interest when paid to persons not described in the Article. Under plaintiff's view, whether the interest was paid to a corporation not present in the United States and whether the interest would be subject to a United States tax solely through the deeming provisions is therefore irrelevant. Although the language of Article XII could be read as broadly as plaintiff suggests, we are compelled to a more restricted reading.

12. "Those not present in the United States," says defendant, includes all alien individuals not residing in the United States and foreign corporations, if such persons are not conducting a trade or business in the United States. Plaintiff apparently does not dispute this definition or its application if the Article is held to be directed only at the deemed sourcing provisions. In any event, we so define and apply the

phrase. *See* S. Exec. Doc. B, *supra* at 3, *reprinted in* 1 Legislative History, *supra* note 5, at 447 (Article XII alleviates "extraterritorial" taxation by the United States); *id.* at 4, *reprinted in* 1 Legislative History, *supra* note 5, at 448 (without Article XII, United States taxation results "even though the recipient of any such [interest or] dividend * * * [is] not resident in the United States").

We begin by noting that both the transmittal letter from the Acting Secretary of State and the Senate Report set out in Part III, *supra*, focus considerable attention of Article XII's exemption of income received by one not present in the United States and subject to tax solely through the deemed sourcing provisions. If plaintiff's view is correct that the waiver of such taxes was only part of a larger purpose to exempt interest as a class, the recurring focus on the deeming provisions without mention of the larger purpose is most surprising. Instructive, we think, is the following portion of the Acting Secretary of State's transmittal letter:

The major phases of the convention may be summarized as follows:

(1) *Adoption of principles of determination, and taxation, of business income derived by enterprises of one of the contracting states from sources within the other contracting state*; (2) *reciprocal exemption from taxation of certain items of income derived from sources within one country by residents or corporations of the other country*; (3) reduction, reciprocally, to 15 percent in the rate of taxation upon certain income derived by individual residents of Canada and by Canadian corporations from United States sources if such persons and corporations are not engaged in trade or business within the United States and have no office or place of business therein; (4) *alleviation, with respect to Canada, of certain allegedly extraterritorial taxation by the United States of nonresident aliens and foreign corporations*; (5) the settlement of certain pending cases of Canadian residents and Canadian corporations involving the taxation of capital gains and the application of the principles involved in (4), supra; and (6) cooperation between the two countries directed against evasion of taxation imposed by the respective countries.

*Articles I to IV, inclusive, are concerned with the first aspect; articles V to X, inclusive, with the second*; article XI with the third; *articles XII and XIII with the fourth*; article XIV with the fifth; and articles XIX to XXI, inclusive, with the sixth. Article XV preserves existing methods of avoidance of double taxation. Article XVI merely recites principles which in any event are implicit in the convention. Article XVII makes clear that the convention leaves undisturbed the taxation by the United States of its own citizens and corporations. Article XVIII confers power upon the appropriate authorities to make regulations incident to the administration of the convention in the respective countries. [S. Exec. Doc. B, *supra* at 2–3, *reprinted in* 1 Legislative History, *supra* note 5, at 446–447; emphasis supplied.]

Had Article XII been intended to alter the taxation of all Canadian corporate interest, including that associated with a United States business, it is logical that Article XII would be identified in the transmittal letter with either the first or second aspect of the treaty. Yet the explanatory paragraphs associate Article XII only with the fourth aspect, "alleviation * * * of certain allegedly extraterritorial taxation by the United States * * *," a clear reference to the taxes imposed solely by virtue of the deemed sourcing provisions on those not present in the United States. *See* Part III, *supra*; note 12, *supra*.

Other paragraphs in the transmittal letter also demonstrate Article XII was not intended as the wholesale exemption for interest that plaintiff claims:

*Except as indicated below, the articles of the convention are in accord with existing revenue laws of the United States and are consistent with or similar to the provisions of the conventions in regard to double taxation of 1932 between the United States and France and of 1939 between the United States and Sweden.*

\* \* \* \* \* \*

Articles XII and XIII are concerned with the solution of problems which have existed for many years growing out of (a) the taxation by the United States of [interest or] dividends paid to Canadians by Canadian corporations and (b) the

taxation by the United States of Canadian corporations which are classified as personal holding companies. With respect to (*a*), it has long been provided in the revenue laws of the United States that, upon certain conditions, [interest or] dividends paid by a foreign corporation to nonresident aliens and to foreign corporations are regarded as income from sources within the United States and as such are taxable by the United States in the hands of persons or corporations receiving the [interest or] dividends, even though the recipient of any such [interest or] dividend and the foreign corporation paying it are not resident in the United States. The Canadian revenue laws do not contain any corresponding provision and this feature of the revenue law of the United States has been the object of frequent objection on the part of the Canadian authorities as being a form of extraterritorial taxation. In practice the collection of the tax from Canadian nationals or corporations receiving such [interest or] dividends has proved a difficult matter. The proposed article XII, by providing for exemption of such [interest or] dividends from United States taxation, removes a source of irritation to Canada and constitutes a favorable factor in securing from Canada information at the source with respect to the identity of persons whose addresses are in the United States and who derive from sources in Canada dividends, interest, and other income, as well as in securing other information from Canadian sources which will be of considerable use in the administration of the revenue laws of the United States. The provision, therefore, it is believed, would prove of appreciable utility to both countries. [S. Exec. Doc. B, *supra* at 3–4, *reprinted in* 1 Legislative History, *supra* note 5, at 447–448; emphasis supplied.]

At the time the 1942 treaty was considered, the worldwide income of a foreign corporation conducting a United States life insurance business was partially subject to United States tax.[13] It is a corollary of plaintiff's Article XII theory that the taxing provisions listed in note 13, *supra*, were inconsistent with, and therefore overridden by, Article XII to the extent of interest paid by a Canadian corporation. Yet the explanatory paragraphs indicate that "[e]xcept as [noted], the articles of the convention are in accord with existing [United States] revenue laws * * *." While those explanatory paragraphs go on to expressly indicate the deemed sourcing provisions in the revenue laws were supplanted by Article XII, there is no mention that the *source-blind* taxation of a foreign corporation's United States life insurance operations would be modified. Inasmuch as no inconsistency is mentioned, the plain inference is that Article XII was not the exemption of all Canadian corporate interest that plaintiff claims. And when the "[e]xcept as [noted]" language is considered with the paragraphs correlating each treaty article with an aspect of the treaty, that conclusion becomes certain.

To escape this result, plaintiff points to the 1951 amendments which made the Article XII exemption applicable to Canadian taxation of interest and dividends paid by United States corporations. Canada has no deemed sourcing provisions, plaintiff ar-

---

13. *See* 1939 I.R.C. §§ 201–203, 206, and 237, as those provisions read prior to the Revenue Act of 1942, *supra* note 2. Under these provisions, foreign corporations with United States life insurance operations were taxed on a percentage of their worldwide income. That percentage was established by the ratio between the company's United States reserves and worldwide reserves. While income regardless of source generally entered this computation, the calculus provided a rough approximation of the income derived only from United States operations if the return on United States investments equaled the return on non-United States investments.

The return on non-United States investments, however, often exceeded that from investments in the United States. In those circumstances, the pre-1942 formula subjected a disproportionate share of income to United States taxation. Largely due to this "overtaxation" by the United States, the manner of taxing foreign life insurers' United States operations was changed in the Revenue Act of 1942, *supra* note 2. *See* note 18, *infra*.

gues, and if Article XII only waives those provisions, the 1951 amendments were unnecessary.[14]

The transmittal letter from Secretary of State Dean Acheson accompanying the 1951 amendments indicates Article XII was broadened merely to make Article XII "reciprocal instead of unilateral." S. Exec. Doc. R, 81st Cong., 2d Sess. 5 (1950), reprinted in 1 Legislative History, supra note 5, at 497. Reciprocity is a major goal of United States tax treaty negotiations, even where there is no need for a reciprocal provision. See Hearings on Double Tax Conventions, supra note 5, at 10–11 (testimony of Eldon P. King, Special Deputy Commissioner of Internal Revenue), reprinted in 1 Legislative History, supra note 5, at 518–519. Leaving aside the reasons reciprocal provisions without reciprocal effect are negotiated,[15] that such provisions are negotiated precludes us from inferring a broadened substantive scope for Article XII from the mere fact of 1951 amendment.

Plaintiff also suggests various reformulations of Article XII which would have precisely indicated only a waiver of the deemed sourcing provisions was intended. Defendant counters, with considerable persuasiveness, that each of plaintiff's reformulations leads to other uncertainties.[16] Leaving aside the problems with plaintiff's reformu-

lations, the ultimate question remains what was intended when the language actually employed in Article XII was chosen, imperfect as that language may be. As we have set out in this Part IV, that language, when understood in light of the treaty's history and explanatory provisions, effected only a waiver of United States taxes imposed solely through the deemed sourcing provisions on those not present in the United States.[17]

## V.

We need not rest today's decision exclusively on the Canadian treaty's history and explanatory provisions, however. Other factors indicate our result is the proper one.

In an appropriate case, subsequent legislative action may demonstrate what intent underlies the initial enactment. See Pigeon River Improvement, Slide & Boom Co. v. Charles W. Cox, Ltd., 291 U.S. 138, 160–161, 54 S.Ct. 361, 367, 78 L.Ed. 695 (1934). See also Oldfield v. Marriott, 51 U.S. (10 How.) 146, 158, 13 L.Ed. 364 (1850). In Pigeon River, supra, the issue was whether a state could authorize tolls on boundary waterways that by treaty were to remain "free and open." Following the state action, Congress specifically authorized such tolls. In concluding that the original state tolls were consistent with the treaty, the Court observed with regard to the subsequent Congressional action:

**14.** Plaintiff does not argue that the 1951 modifications in the language concerning *United States taxation* worked any substantive change in Article XII.

**15.** The State and Treasury Departments perhaps wish to be ready if other nations, following the United States' lead, one day adopt their own expansive notions of tax jurisdiction. *See* note 11 and accompanying text, *supra.* However unlikely this might presently appear, obtaining reciprocal provisions is hardly, as plaintiff would suggest, a "meaningless exercise."

**16.** For example, plaintiff suggests the "exempt from all income taxes" language *is* unnecessarily broad had the drafters intended to waive only the taxes imposed through the deemed sourcing provisions on a recipient not present in the United States. That argument ignores, however, the separate liability for withholding tax imposed on the payor. *See* 1939 I.R.C. § 143; I.R.C. §§ 1461–1464. Some version of the "all taxes" language thus would have been

necessary to end the *payor's* tax liability apart from the *recipient's* tax liability.

As the text discusses, that other formulations of Article XII might have more perfectly expressed the drafters' intent does not alter our view of that intent.

**17.** We note that a federal district court has suggested in dicta that Article XII would exempt from United States taxation all interest paid by a Canadian corporation to another Canadian corporation. *Canadian Fire Ins. Co. v. Riddell*, 56–2 U.S.T.C. ¶ 9652, 51 A.F.T.R. 1100 (S.D.Cal.1956). Whatever else may be said of the result reached in *Canadian Fire*, we find that decision unhelpful. *Canadian Fire* contained no discussion of Article XII's history or purpose, factors which we view as critical. *Cf. Gordon v. United States*, 227 Ct.Cl. ——, —— n.23, 649 F.2d 837, 843 n.23 (1981) (holdings by other federal appellate courts that I.R.C. § 7426 affords exclusive remedy are unpersuasive in light of minimal analysis therein).

* * * But the intention to abrogate or modify a treaty is not to be lightly imputed to the Congress. * * * We think that it is proper to infer that the Congress, in view of the condition of the stream and the purpose of the improvements, did not consider the authority to make them and to impose a reasonable charge for their use, as being inconsistent with the treaty stipulation. We regard the action of the Congress, following that of the State, as a practical construction of the treaty as permitting these works and justifying the charge. [291 U.S. at 160–161, 54 S.Ct. at 367.]

Similar considerations are applicable to the present case.

Within a few months after the 1942 treaty was approved by the Senate, the Revenue Act of 1942, *supra* note 2, was passed. The Revenue Act of 1942 radically altered taxation of the worldwide interest attributable to a foreign corporation's United States life insurance business.[18] The Committee Reports disclose that it was at the insistence of *Canadian* life insurance companies that this change was made. *See* S.Rep.No.1631, 77th Cong., 2d Sess. 144 (1942), *reprinted in* 1942–2 C.B. 504, 611; H.R.Rep.No.2333, 77th Cong., 2d Sess. 108 (1942), *reprinted in* 1942–2 C. B. 372, 453. Had Congress viewed Article XII as completely exempting Canadian corporate interest such as plaintiff now claims, the almost contemporaneous changes as to for-

eign life insurers made through the Revenue Act of 1942 would have been largely unnecessary. That Congress made such extensive changes without even mentioning Article XII constitutes a "practical construction" by Congress that Article XII did not extend to the Canadian corporate interest plaintiff now seeks to exclude.

■ Moreover, the case law is clear that the meaning given a treaty by an appropriate Government agency is of great weight. *See Kolovrat v. Oregon*, 366 U.S. 187, 194, 81 S.Ct. 922, 926, 6 L.Ed.2d 218 (1961); *Maximov v. United States, supra* note 6, at 568; *Factor v. Laubenheimer, supra*, 290 U.S. at 294–295, 54 S.Ct. at 196; *United States v. A. L. Burbank, supra* note 6, at 14–15. Here, the Departments of State and Treasury apparently not only have so interpreted Article XII of the Canadian treaty but also negotiated other treaties[19] on this basis. *See* Hearings on Double Tax Conventions, *supra* note 5, at 10–11 (testimony of Eldon King), *reprinted in* 1 Legislative History, *supra* note 5, at 518–519. *See also United States v. A. L. Burbank, supra* note 6, at 13, 14–15. It is further of relevance that this, the first true litigation over the scope of Article XII, arose some 30 years after the Article became effective.

These considerations also convince us Article XII was not the wholesale exemption for Canadian corporate interest that plaintiff claims.[20]

---

**18.** Prior to the Revenue Act of 1942, *supra* note 2, foreign corporations conducting a United States life insurance business were taxed on a percentage of their worldwide income. *See* note 13, *supra*. Under the taxing system established by the Revenue Act of 1942, *supra* note 2, foreign corporations conducting a United States life insurance business were taxed only on the worldwide income attributable for purposes of regulatory accounting to that United States business. *See* 1939 I.R.C. §§ 201–203, as amended by § 163(a) of the Revenue Act of 1942, *supra* note 2.

**19.** *E.g.*, Article VII of the Double Tax Convention Between the United States and Honduras, February 6, 1957, 8 U.S.T. 219, T.I.A.S. No. 3766; Article XII of the Income and Property Tax Convention Between the United States and the Netherlands, December 1, 1948, 62 Stat. 1757, T.I.A.S. No. 1855; Article X of the In-

come & Property Tax Convention Between the United States and Luxembourg, December 22, 1964, 15 U.S.T. 2355, T.I.A.S. No. 5726; Article XV of the Double Tax Convention Between the United States and the United Kingdom, July 25, 1946, 60 Stat. 1377, T.I.A.S. No. 1547.

**20.** The parties have focused considerable attention on whether plaintiff would be entitled to a foreign tax credit under I.R.C. § 906 for any Canadian taxes attributable to this Canadian corporate interest. Whether such credit is allowable might have a bearing on whether one of the treaty's major purposes, to avoid a tax by both the United States and Canada on the same item of income, is served if Article XII is read as plaintiff suggests. *See generally Compagnie Financiere de Suez et de L'Union Parisienne v. United States*, 203 Ct.Cl. 605, 626–628, 492 F.2d 798, 810–811 (1974). In light of our

## CONCLUSION

 In light of the analysis presented in Parts IV and V of this opinion, we hold that Article XII of the Double Tax Convention Between Canada and the United States does not exempt from United States taxation all interest paid by a Canadian corporation to another Canadian corporation. We further hold that Article XII was directed only at the taxation, through the deemed sourcing provisions, of those not present in the United States. Plaintiff is present in the United States by virtue of its United States life insurance operations and it follows that Article XII can have no bearing on plaintiff's tax liability for 1967, 1968, or 1969. Defendant's cross motion for summary judgment should be and is hereby granted; plaintiff's motion for summary judgment should be and is hereby denied. The petition is dismissed.

conclusion that Article XII should not be so read, we need not and expressly do not reach the I.R.C. § 906 issue.