761 F.2d 688
 56 A.F.T.R.2d 85-5019, 85-1 USTC P 9381
 Paul H. and Patricia COPLIN, Appellees,
v.
The UNITED STATES, Appellant.
Robert E. O'CONNOR, et ux., Gladys E. O'Connor, Appellees,
v.
The UNITED STATES, Appellant.
Jon D. COFFIN, Appellee,
v.
The UNITED STATES, Appellant.
Jack R. and Maria R. MATTOX, Appellees,
v.
The UNITED STATES, Appellant.
 Appeal Nos. 85-504 to 85-507.
 United States Court of Appeals,
Federal Circuit.
 May 10, 1985.
 
 Michael Paup, Tax Div., Dept. of Justice, Washington, D.C., argued for appellant. With him on brief were Glenn L. Archer, Jr., Asst. Atty. Gen. and David English Carmack, Washington, D.C.
 Andrew Barnard, Barnard, P.A., Miami, Fla., argued for appellees Paul H. and Patricia Coplin. With him on the brief were George S. Barnard and Beverly Barnard Parker, Miami, Fla.
 David J. Kiyonaga and Michael C. Pierce, Balboa, Republic of Panama, of counsel.
 Allan I. Mendelsohn, Ward & Mendelsohn, Washington, D.C., argued for appellees Robert E. O'Connor, et ux. and Gladys E. O'Connor. With him on the brief was Marvin L. Szymkowicz, Washington, D.C.
 Dwight A. McKabney, APO, Miami, Fla., of counsel.
 John C. Morrison, Kiefer & Morrison, Washington, D.C., was on brief for appellees, Jack R. and Maria R. Mattox.
 Elisabeth A. Walker and Darrell F. Brown, Darrell F. Brown and Associates, P.A., Little Rock, Ark., were on brief, for appellee Jon D. Coffin.
 Before RICH, BALDWIN, SMITH, NIES and BISSELL, Circuit Judges.
 BISSELL, Circuit Judge.
 
 
 1
 The government appeals from a decision of the United States Claims Court holding that United States citizens employed by the Panama Canal Commission are exempt from United States income tax. We reverse.
 
 BACKGROUND
 
 2
 These appeals were consolidated by order of this court dated October 22, 1984, and involve suits for the refund of federal income taxes. Paul Coplin, Robert O'Connor, Jon Coffin, and Jack Mattox are United States citizens and during the respective relevant tax years were employees of the Panama Canal Commission (Commission), an agency of the United States government. The wages they received from the Commission were included in computing their federal income tax for the years 1979 (Coplin and Coffin), 1980 (Mattox), and 1981 (O'Connor and Mattox). Based on their understanding of an international agreement, the taxpayers filed claims for refund for the amount of tax paid with respect to income received from the Commission. The Internal Revenue Service denied each of their claims and these suits followed.
 
 
 3
 On September 7, 1977, after years of negotiation, the United States and the Republic of Panama signed the Panama Canal Treaty, T.I.A.S. No. 10030. The Senate approved the treaty and it entered into force on October 1, 1979, restoring to Panama territorial sovereignty over the Canal Zone. Panama granted to the United States the right to manage, operate, and maintain the canal until the year 2000. During this period the canal is to be operated by the Commission. The treaty provides for increasing participation by the Republic of Panama in the management of the canal, in preparation for its assumption of full responsibility for the canal's operation when the treaty expires.
 
 
 4
 Because the Canal Zone would no longer be subject to United States territorial sovereignty, it was necessary to define the rights and legal status of the Commission and its employees vis-a-vis each country. These matters were to be governed by the Agreement Implementing Article III of the Panama Canal Treaty, Sept. 7, 1977, United States-Panama, T.I.A.S. No. 10031 (Implementation Agreement). The Implementation Agreement contains twenty-one articles governing such subjects as registration of vehicles, exemption from import duties, and criminal jurisdiction. Article XV thereof deals with taxation of the Commission and its United States citizen employees:
 
 ARTICLE XV
 Taxation
 
 5
 1. By virtue of this Agreement, the Commission, its contractors and subcontractors are exempt from payment in the Republic of Panama of all taxes, fees or other charges on their activities or property.
 
 
 6
 2. United States citizen employees and dependents shall be exempt from any taxes, fees, or other charges on income received as a result of their work for the Commission. Similarly, they shall be exempt from payment of taxes, fees or other charges on income derived from sources outside the Republic of Panama.
 
 
 7
 3. United States citizen employees and dependents shall be exempt from taxes, fees or other charges on gifts or inheritance or on personal property, the presence of which within the territory of the Republic of Panama is due solely to the stay therein of such persons on account of their or their sponsor's work with the Commission.
 
 
 8
 4. The Coordinating Committee may establish such regulations as may be appropriate for the implementation of this Article.
 
 
 9
 The dispute centers on the correct interpretation of the first sentence in paragraph two. The taxpayers claimed that, according to a literal interpretation, income earned by all United States citizens from the Commission was exempt from United States income taxation. The government contended that the provision was intended to bar only Panama, and not the United States, from taxing Commission employees. The court entered an order stating that all parties would be bound by relevant rulings in the Coplins' case. On cross-motions for summary judgment the Claims Court granted the Coplins' motion and denied the government's motion. Coplin v. United States, 6 Cl.Ct. 115 (1984). On the basis of Coplin, the court entered judgment for the taxpayers in all four cases on July 31, 1984.
 
 OPINION
 
 10
 This court has jurisdiction pursuant to 28 U.S.C. Sec. 1295(a)(3). In reviewing a grant of summary judgment we determine whether there is no genuine issue of material fact and whether the movant is entitled to judgment as a matter of law. D.M.I., Inc. v. Deere & Co., 755 F.2d 1570, 1573 (Fed.Cir.1985).
 
 
 11
 In the Claims Court the government argued that the treaty language should not be construed literally because to do so would do violence to the intention of the signatories. The court recognized that it should not give literal effect to treaty language if it was persuaded that such language did not reflect the intention of the parties. Coplin, 6 Cl.Ct. at 127. The court observed that "the record is devoid of any statement of the official Panamanian position." Id. at 146. Despite government arguments that the literal language did not reflect the intention of the United States, the court construed the language literally because the government presented "no evidence whatsoever as to the interpretation given this language by Panama." Id. at 128, 145-47, 149 (emphasis in original).
 
 
 12
 On the morning of March 4, 1985, the day we heard oral argument in this case, the government's reply brief was delivered to the chambers of the panel members. In that brief the government informed the court that "[o]n February 25, 1985, the United States received a diplomatic note from the Panamanian Foreign Minister in which he confirmed that the Panamanian Foreign Ministry shared the United States' view that the Implementing Agreement was not intended to affect United States taxation of Commission employees." Reply Br. at 6. The Foreign Minister enclosed letters from the Panamanian team that negotiated the Implementation Agreement. In those letters the Panamanian negotiators confirmed that Paragraph 2 of Article XV was "discussed, negotiated and drafted exclusively with respect to the tax exemption that the Republic of Panama would grant to United States-citizen employees of the Commission and their dependents" and that the "provisions resulted from negotiations that did not deal with the United States['] authority to tax the individuals mentioned therein." Id. In an appendix to the brief the government included the cable from the United States embassy in Panama transmitting the diplomatic note and the accompanying letters to the State Department.
 
 I. Motions to Strike
 
 13
 Later that morning the appellees filed motions to strike all of the documents in the appendix to the reply brief as well as all references to them in the text of the reply brief.
 
 
 14
 The general rule on supplementing the record with new evidence is that "appellate courts ... can act on no evidence which was not before the court below, nor receive any paper that was not used at the hearing." Boone v. Chiles, 35 U.S. (10 Pet.) 177, 208, 9 L.Ed. 388 (1836); cf. United States v. Miller, 80 U.S. (13 Wall.) 568, 576, 577, 20 L.Ed. 705 (1872) (evidence cannot be received in Supreme Court to contradict a finding of Court of Claims).
 
 
 15
 Nevertheless, the Supreme Court has recognized a long established exception when construing the meaning of treaties. Reversing the judgment of a lower court on the question whether the validity of a grant of land was protected by certain treaties, the Supreme Court examined diplomatic records outside the record and held that "the public acts and proclamations of [foreign] governments, and those of their publicly recognized agents, in carrying into effect those treaties, though not made exhibits in this cause, are historical and notorious facts, of which the court can take regular judicial notice." United States v. Reynes, 50 U.S. (9 How.) 127, 147-48, 13 L.Ed. 74 (1850); see generally Jones v. United States, 137 U.S. 202, 214-16, 11 S.Ct. 80, 84-85, 34 L.Ed. 691 (1890). In construing an extradition treaty the Court directed counsel's attention to matter outside the record and invited counsel to conduct a further search through "available diplomatic records and correspondence" in preparation for reargument of the case. Factor v. Laubenheimer, 290 U.S. 276, 295, 54 S.Ct. 191, 196, 78 L.Ed. 315 (1933). Nor is our consideration of the cable barred because it was not "available" when the record closed in the lower court. In determining the proper interpretation of a treaty provision, the Supreme Court relied on expressions of intent in diplomatic correspondence dated more than a year after the appellate court decision and within a few days of argument before the Court itself. Sumitomo Shoji America, Inc. v. Avagliano, 457 U.S. 176, 184 n. 9, 102 S.Ct. 2374, 2379 n. 9, 72 L.Ed.2d 765 (1982). Therefore, we deny the motions to strike.
 
 II. The Merits
 
 16
 The court's "role is limited to giving effect to the intent of the Treaty parties." Sumitomo, 457 U.S. at 185, 102 S.Ct. at 2380; accord Great-Western Life Assurance Co. v. United States, 678 F.2d 180, 183, 230 Ct.Cl. 477 (1982) (treaties must be construed to enforce intent of contracting parties). Because we deny the motions to strike, the record now reveals the intent of each government. Since both treaty parties agree that paragraph 2 was not intended to create an exemption from United States domestic taxation, the trial court's decision cannot be upheld. It is the government, not the taxpayers, which is entitled to judgment as a matter of law. Therefore, we reverse the decision of the Claims Court and direct that summary judgment be granted in favor of the appellant.
 
 III. Costs
 
 17
 The government is denied its costs.
 
 
 18
 REVERSED.
 
 
 19
 BISSELL, Circuit Judge, Additional Views, in which SMITH, Circuit Judge, joins.
 
 
 20
 While it is proper for this court to take judicial notice of the new evidence, introducing it hours before oral argument is certainly not something I want to encourage. The government has been on notice since the Coplins' case was filed in August 1981 that there would be judicial review of its interpretation of the Implementation Agreement's paragraph 2. During the more than four years that have elapsed there was ample opportunity to obtain the Panamanian interpretation of that provision. Indeed, the Claims Court repeatedly offered the government the opportunity to supplement the record with evidence of the official Panamanian position; the government "steadfastly refused." Coplin, 6 Cl.Ct. at 147. Moreover, as late as November 30, 1984, the government gave no hint it was about to introduce new evidence. To the contrary, commenting on its "refusal in this case to approach the government of Panama," the government reconfirmed its position: "The United States has consistently believed that there is no need to request that the Government of Panama supply its interpretation of Article XV, paragraph 2...." Brief for Appellant at 46. Then, without notice and only one working day before oral argument, the government suddenly revealed the diplomatic note to the taxpayers. Under these circumstances, to require the taxpayers to bear even their own costs borders on the unconscionable. Therefore, I would have the government pay the taxpayers' costs.
 
 
 21
 NIES, Circuit Judge, with whom RICH and BALDWIN, Circuit Judges, join, concurring.
 
 
 22
 I concur in the result of the majority decision that United States citizens employed by the Panama Canal Commission are not exempt from United States income taxes by Article XV of the Agreement in Implementation of Article III of the Panama Canal Treaty. A complete reading of the record, the treaty and the Implementation Agreement leads me to conclude that Article XV had no relevance to taxation by the United States of its own citizens. As held in Corliss v. United States, 567 F.Supp. 162, 164 (W.D.Ark.1983):
 
 
 23
 When taken as a whole, the Court believes the import of Article XV is that the United States seeks to protect its agency, the Canal Commission, and its employees who work for that agency, from taxation by Panama on property or work activities other than private business activities in Panama unrelated to the Commission and property used in these activities.
 
 
 24
 Accord, Highley v. United States, 574 F.Supp. 715 (M.D.Tenn.1983).
 
 
 25
 With this understanding of the import of the entire Article, there is no need to construe the words "any taxes" in paragraph 2 other than literally. One need simply identify the Article by the title, "Taxation by the Republic of Panama," rather than "Taxation" simpliciter.
 
 
 26
 With respect to the late filed concurrence by the Panamanian government with the interpretation by the U.S. State Department, that evidence was not necessary to the above decisions and is not necessary here. It merely confirms the most reasonable interpretation of the Article.