Joseph L. ALIOTO, Plaintiff-Appellant,

v.

COWLES COMMUNICATIONS, INC.,
Defendant-Appellee.

No. 73–1834.

United States Court of Appeals,
Ninth Circuit.

June 23, 1975.

Certiorari Denied Nov. 3, 1975.
See 96 S.Ct. 280.

Peter J. Donnici (argued), San Francisco, Cal., for plaintiff-appellant.

Charles W. Kenady (argued), San Francisco, Cal., for defendant-appellee.

## OPINION

Before WRIGHT and CHOY, Circuit Judges, and EAST,* District Judge.

CHOY, Circuit Judge:

The September 23, 1969, issue of LOOK magazine contained an article entitled "The Web That Links San Francisco's Mayor Alioto and the Mafia: A LOOK report on the private Joseph Alioto and his relationships with organized crime." The article, written by two young employees of a San Francisco television station, accused Alioto of using his position as chairman of the board of a San Francisco bank to obtain loans for a trucking company run by James Fratianno, a convicted felon alleged to be a West Coast Mafia operative. The source of the information upon which this accusation was based was Fratianno's son-in-law, Tommy Thomas. Thomas claimed that Fratianno had told him of a number of meetings between Alioto and several underworld figures at the Nut Tree, a Bay Area restaurant. Thomas also claimed knowledge· of connections between the Mafia and other prominent politicians. FBI and California law enforcement authorities were unable to corroborate the alleged meeting or other relationships between Alioto and the Mafia.

After agreeing to buy the article, LOOK editors had the authors interview Alioto. The authors asked Alioto about his connections with Fratianno, but did not tell him of their forthcoming Nut Tree accusations. When Alioto later learned that an article was to be published, he demanded, in a series of telegrams, a meeting with LOOK editors. LOOK officials replied that such a meeting would serve no useful purpose, since the story had already been sent to the printers.

Alioto responded by filing a libel suit in federal district court against LOOK's publisher, Cowles Communications, Inc. The first trial ended in a hung jury. On retrial, the jury returned a special verdict, finding that the article was false and that it was defamatory. The jury was unable to agree whether the article had been published with the requisite actual malice, however.

Despite this inconclusive verdict, the district judge awarded judgment to Cowles. He held that a finding of actual malice by both judge and jury was required in order for Alioto to recover, and that he found that actual malice "was not shown with convincing clarity." Therefore, he granted Cowles' motion for judgment n.o.v. Furthermore, he found that Alioto was entitled only to special damages because he had not complied with the requirements of Cal.Civ. Code § 48a by demanding a retraction within 20 days of publication; Alioto had demanded only general and punitive damages, so the judge granted Cowles' motion for summary judgment.

Alioto appeals. We reverse and remand for a new trial on the issue of actual malice.

### Retraction

California permits a publisher or broadcaster to escape liability for general damages in a libel suit if he publishes or broadcasts a retraction upon proper demand:

1. In any action for damages for the publication of a libel in a newspaper, or of a slander by radio broadcast, plaintiff shall recover no more than special damages unless a correction be demanded and be not published or broadcast, as hereinafter provided. Plaintiff shall serve upon the publisher, at the place of publication or broadcaster at the place of broadcast, a written notice specifying the statements claimed to be libelous and demanding that the same be corrected. Said notice and demand must be served within 20 days after knowledge of the publication or broadcast of the statements claimed to be libelous.

Cal.Civ.Code § 48a(1).

On its face, section 48a does not apply to magazines. One division of the California Court of Appeal has held explicit-

---

* The Honorable William G. East, Senior District Judge for the District of Oregon, sitting by designation.

ly that magazines are not covered by either the letter or the rationale of section 48a. *Morris v. National Federation of the Blind,* 192 Cal.App.2d 162, 13 Cal. Rptr. 336 (1961). Other divisions have applied section 48a to magazines without apparent notice that the statute specifies libels in newspapers, not all printed media. *Shumate v. Johnson Publishing Co.,* 139 Cal.App.2d 121, 293 P.2d 531 (1956); *Harris v. Curtis Publishing Co.,* 49 Cal. App.2d 340, 121 P.2d 761 (1942).

The California Supreme Court has added to the confusion in an opinion applying section 48a to the Reader's Digest. *Briscoe v. Reader's Digest Association,* 4 Cal.3d 529, 93 Cal.Rptr. 866, 483 P.2d 34 (1971). In two sentences near the end of a long opinion, the *Briscoe* court stated only that the plaintiff had not complied with the requirements of section 48a, and thus was limited to recovery of special damages. The court did not discuss the contrary decision in *Morris,* nor the fact that it was construing "newspaper" to include magazines.

In a case decided this year, a division of the Court of Appeal has refused to acknowledge *Briscoe* as requiring extension of 48a to publishers of magazines. *Montandon v. Triangle Publications, Inc.,* 45 Cal.App.3d 938, 120 Cal.Rptr. 186 (1975). The *Montandon* court carefully analyzed the judicial history of the issue, observing that *Morris* had been the only reasoned decision to date. The court observed that section 48a(3) requires that a retraction be published within three weeks of the demand. While publication within this time would have been possible for the weekly magazine involved in the *Montandon* litigation, the *Montandon* court was unwilling to adopt a construction of the statute which would require a distinction between weekly and biweekly magazines on the one hand and monthly magazines on the other. The court also emphasized the validity of the distinction made in *Morris* between newspapers and broadcast media, which are under pressure to disseminate "news while it is new," and magazines, which have the advantage of greater leisure in which to ascertain the truth of accusations before publishing them. Finally, in examining the legislative history of section 48a, the *Montandon* court observed that the statute originally applied only to newspapers, but had been amended in 1945 and again in 1949 to extend coverage to radio and then to television. The legislature had not seen fit, however, to amend the statute again in 1961 following the *Morris* decision in order to extend coverage explicitly to magazines.

■ We find the reasoning presented by the *Montandon* opinion persuasive. The California Supreme Court has declined to review *Montandon.* Although this action does not of itself indicate approval of the *Montandon* decision, we conclude that if it were confronted with the issue it would decide that, notwithstanding its decision in *Briscoe,* section 48a's requirement of a demand for retraction does not extend to libels appearing in magazines. Therefore, we reverse the district court's judgment that Alioto's claim was limited to special damages and that, having claimed no special damages, he was entitled to no relief.

### Actual Malice

■ In order to recover damages for publication of libelous statements relating to official conduct, a public official must establish that the defendant published the falsehood with actual malice— "that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan,* 376 U.S. 254, 280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964). "Reckless disregard" does not refer to an objective "reasonable man" standard. The defendant must be proved to have subjectively "entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968). To protect first amendment values, the Court requires a higher standard of proof than the usual "preponderance of the evidence"; the recklessness must be demonstrated by "clear and convincing proof." *See, e. g., Rosenbloom v. Metromedia, Inc.,* 403 U.S. 29, 30, 91 S.Ct.

1811, 29 L.Ed.2d 296 (1971). Because of the importance of the interests in freedom of speech and press which are at stake, a court must review the facts to determine whether the jury applied the proper standard; simply ascertaining that the jury was properly instructed does not suffice. *New York Times*, 376 U.S. at 285, 84 S.Ct. 710; *Rosenbloom*, 403 U.S. at 55, 91 S.Ct. 1811.

In his opinion granting Cowles' motion for judgment n.o.v., the district judge stated that a jury could justifiably find that the evidence proved with convincing clarity that the libel was published either with or without actual malice. He then weighed for himself the persuasiveness of the evidence and the credibility of witnesses, took into account that Alioto had twice failed to convince a jury of Cowles' actual malice, and decided that Alioto had failed to establish actual malice.

The court thus implied that a plaintiff in a libel action must persuade two triers of fact: both judge and jury. Judge Skelly Wright has stated the proposition:

> "[T]he trial court at the close of the plaintiff's case must decide whether actual malice has been shown with 'convincing clarity.' In making this judgment the court will judge the credibility of the witnesses and draw its own inferences from the evidence. If the trial is permitted to proceed, the court will be called upon again to make a judgment on the actual malice issue at the close of all of the evidence. If the motion for a directed verdict at this stage of the trial is denied, the actual malice issue, along with the other issues, is then submitted to the jury under the *Times* instruction without any indication from the court or counsel that the court has decided that the evidence shows actual malice with 'convincing clarity.'
>
> This two-step procedure in which both the trial judge and the jury must find actual malice before there can be judgment for the plaintiff provides the protection of the First Amendment

freedom that *Times* sought to make secure in areas of public concern".

*Wasserman v. Time, Inc.*, 138 U.S.App. D.C. 7, 424 F.2d 920, 922–923, *cert. denied*, 398 U.S. 940, 90 S.Ct. 1844, 26 L.Ed.2d 273 (1970) (Wright, J., concurring); *see Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 858 (5th Cir. 1970).

■ Following the district court's decision, however, we repudiated Judge Wright's two-step approach in *Guam Federation of Teachers, Local 1581 v. Ysrael*, 492 F.2d 438 (9th Cir.), *cert. denied*, 419 U.S. 872, 95 S.Ct. 132, 42 L.Ed.2d 111 (1974). A district judge on motion for judgment n.o.v., or an appellate judge on review, must examine the evidence to see whether, if all permissible inferences were drawn in the plaintiff's favor and all questions of credibility were resolved in his behalf, the evidence then would demonstrate by clear and convincing proof that the libelous material was published with actual malice. Once this question has been resolved in the plaintiff's favor, the jury's findings as to those inferences and as to witness credibility are determinative.

■ The district court, while granting Cowles' motion for judgment n.o.v., found that:

> Judging the whole matter objectively on the whole record I think that a jury justifiably could find that the evidence showed with convincing clarity that the authors (and as of the date of publication their states of mind could be imputed to defendant) were ambitious young men, anxious to sell a sensational story to a national magazine; that the Tommy Thomas statements as to the Nut Tree meetings added greatly to the sensational nature and salability of the article; that the authors must have had doubts about the veracity of Tommy Thomas (the sole source of the Nut Tree statements); that they deliberately failed to cross-check on the validity of his statements because they did not want to find them to be untrue, and so published the statements with a reckless disregard for truth.

Our review of the record convinces us that the district judge fairly summarized the permissible inferences which a jury might draw from the evidence. Having found the evidence that LOOK's editors entertained doubts as to the truth of the Nut Tree allegations to be sufficiently clear and convincing in nature were the jury to decide questions of credibility and draw permissible inferences in Alioto's favor, the court was without power to award Cowles judgment notwithstanding the jury's failure to arrive at a verdict. The judgment must be reversed and the case remanded for a new trial on the sole issue of actual malice.

Reversed and remanded.