119 T.C. No. 18


UNITED STATES TAX COURT



BRIAN G. TAKABA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent



Docket No. 5454-99.                Filed December 16, 2002



        This case is before the Court to consider whether
P must pay a penalty pursuant to sec. 6673(a)(1),
I.R.C., and whether P's counsel must pay certain of R's
costs pursuant to sec. 6673(a)(2), I.R.C.  P, initially
pro se, made frivolous arguments, which were continued
by P's counsel, who further advocated the frivolous
argument that the regulations under sec. 861, I.R.C.,
establish that, although P is a U.S. citizen, P's
income in the form of remuneration for services and
bank interest received from sources within the United
States is not subject to tax.
        1.  <u>Held</u>:  P is liable for a penalty under sec.
6673(a)(1), I.R.C., since his position in this case is
frivolous.
        2.  <u>Held</u>, <u>further</u>, P's counsel is liable for R's
excess costs under sec. 6673(a)(2), I.R.C., since he
both knowingly and recklessly made frivolous arguments,
thus unreasonably and vexatiously multiplying these
proceedings.

Paul J. Sulla, Jr., for petitioner.

David Lau, for respondent.


OPINION

HALPERN, Judge:  This case is before the Court to consider whether petitioner must pay a penalty pursuant to section 6673(a)(1) and whether petitioner's counsel, Paul J. Sulla, Jr. (Mr. Sulla), must pay certain of respondent's costs pursuant to section 6673(a)(2).  For the reasons that follow, the Court shall impose on petitioner a penalty of $15,000 and on Mr. Sulla a liability of $10,500.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

### Previous Proceedings

Previously, this case was before the Court on respondent's motions for summary judgment and to award damages (the motions for summary judgment and for damages, respectively).  By order dated June 6, 2001 (the June 6 order), we granted the motion for summary judgment, took under advisement the motion for damages, and ordered petitioner and Mr. Sulla to prepare to show cause why a penalty under section 6673(a)(1) should not be imposed on

petitioner and costs under section 6673(a)(2) should not be imposed on Mr. Sulla. Petitioner and Mr. Sulla appeared and were heard in response to the orders to show cause at the trial session of the Court commencing on June 18, 2001, in Honolulu, Hawaii (the 2001 trial session). Due in part to the length of Mr. Sulla's argument, the Court ordered additional submissions with respect to its orders to show cause.

June 6 Order

The following is extracted or summarized from the June 6 order and is helpful to explain our imposition of a penalty and costs.

By notice of deficiency dated December 21, 1998 (the notice), respondent determined a deficiency of $3,407 in petitioner's 1996 income tax and additions to tax of $669.52, $295.35, and $165.64 under sections 6651(a)(1) (failure to file a return), 6651(a)(2) (failure to pay tax), and 6654(a) (failure to pay estimated tax), respectively.

The facts that we relied on in granting the motion for summary judgment are as follows:

> During 1996, petitioner was employed by Thunderbug, Inc. (Thunderbug), a domestic (United States) corporation doing business as Magnum Motorsport. During 1996, petitioner received remuneration in the amount of $29,251 from Thunderbug as compensation for labor or services performed by petitioner in the United States. Petitioner also received interest in 1996 from American Savings Bank in the amount of $13. Petitioner failed to file a U.S. Income tax return for 1996. Petitioner did not make any estimated tax payments for

1996. Petitioner was a citizen of the United States for 1996, and continues to be a citizen of the United States to the present.

In granting the motion for summary judgment, we rejected petitioner's arguments that he (1) did not receive any wages (as defined by section 3401(a)) or gross income from any source that could be included as taxable income, thereby making his income exempt from taxes, and (2) is not required to file a Form 1040, U.S. Individual Income Tax Return, because that form (for 1996) does not have an Office of Management and Budget approval number and is therefore a bogus form he is allowed by law to ignore without penalty.

With respect to the motion for damages, we set forth the provisions of section 6673(a)(1) (reproduced infra), and stated:

> A taxpayer's position is frivolous "if it is contrary to established law and unsupported by a reasoned, colorable argument for change in the law. * * * The inquiry is objective. If a person should have known that his position is groundless, a court may and should impose sanctions." Coleman v. Commissioner, 791 F.2d 68, 71 (7th Cir. 1986); see also Hansen v. Commissioner, 820 F.2d 1464, 1470 (9th Cir. 1987) (trial court's finding that taxpayer should have known that claim was frivolous allows for section 6673 penalty); Booker v. Commissioner, T.C. Memo. 1996-261.

> This Court has imposed penalties on taxpayers for making arguments similar to those made by petitioner. See Aldrich v. Commissioner, supra; McCart v. Commissioner, supra; Liddane v. Commissioner, T.C. Memo. 1998-259; Wesselman v. Commissioner, T.C. Memo. 1996-85; see also Buchbinder v. Commissioner, 999 F.2d 542 (9th Cir. 1993) (sanctions for frivolous appeal).

With respect to the imposition of costs on Mr. Sulla, we set forth the pertinent provisions of section 6673(a)(2) (also reproduced infra) and stated:

> The "Declaration of Paul J. Sulla, Jr." and "Petitioner's Memorandum of Points and Authorities in Opposition to Motion for Summary Judgment", signed by Paul J. Sulla, Jr., both attached to petitioner's memorandum, indicate Mr. Sulla's advocacy of petitioner's nonmeritorious positions in this case. * * *

As stated, we ordered both petitioner and Mr. Sulla to show cause why they should not be sanctioned under section 6673(a).

Pertinent Events Preceding the 2001 Trial Session

Respondent determined the deficiencies in, and additions to, tax set forth in the notice on the basis of (1) information reported to respondent by petitioner's employer, Thunderbug, and his bank, American Savings Bank, and (2) the fact that petitioner did not file any return for 1996 or pay any estimated tax.

The petition was filed on March 22, 1999, petitioner appearing on his own behalf. Mr. Sulla did not enter his appearance until June 21, 2000.

By the petition, petitioner denies "having any 'income' from any source for * * * [1996] that is the subject of a tax." He denies "being required to file any annual return" for 1996. Finally, he denies "being liable for any penalties/additions to tax for" 1996.

On May 20, 1999, respondent received from petitioner a request for the production of documents. By that request, petitioner asked for "[a]ll records that Respondent intends to use at trial to establish that the Sixteenth Amendment authorized Congress to tax Petitioner's income."

By letter dated August 5, 1999, petitioner delivered to respondent petitioner's "Demand for Answers to a More Definite Statement", in which, among other things, petitioner demanded answers to the following questions:

> On the first page of the 1040 Instruction Booklet, the Commissioner of the IRS states "Thank you for making this nations's tax system the most effective system of voluntary compliance in the world".
>
>> (1) Why does the Commissioner say that?
>> (2) What does that mean?
>> (3) And how does it affect the Demandant [petitioner]?
>
> * * * * * * *
>
> Is the Untied States/Internal Revenue service, Honolulu appeals Office #50089 in this case, in a condition of bankruptcy? If so, what authority does the United State/Internal Revenue Service, Honolulu Appeals Office #50089 claim as a right to make a claim against the Demandant in United States/Internal Revenue Service, Honolulu Appeals Office #50089's name as a principal?
>
> * * * * * * *
>
> What facts are relied upon, if any, to assert that Demandant is a citizen, state resident, juristic person, or other legal person belonging to the Internal Revenue Service, Honolulu Appeals Office #50089?
>
> State all facts relied upon which would put the Demandant in any venue, or jurisdiction other than one of common law?

* * * * * * *

Is the statute, ordinance or regulation that you rely on to compel me to file tax returns, and pay a tax founded upon duties owed by citizen, resident or creation of the state?

    (a)   If so, what state?

    (b)   Where is the definition of that state found in the statutes, ordinances, or regulations relief [sic] upon?

On January 19, 2000, respondent's counsel sent a letter to petitioner advising him that his position was frivolous and that respondent would ask the Court to impose damages against him under section 6673(a).

In a letter dated April 6, 2000, from petitioner to respondent's counsel, petitioner states the following:

I reviewed the sections of the code that you supplied me [sections 1, 61, 6012, attached to counsel's letter of March 24, 2000]. There is no statement in any of those sections that specifically states that "income" is the thing that is being taxed. Until you establish a legal and factual basis for your claim that "income" is the subject of the tax[,] the amount and sources of my "income" is not relevant to the issue. The IRS issued the notice of deficiency claiming that "income" is the subject of the tax and that because I have "income" I am required to pay a tax on that "income". I can't wait to get IRS employees on the stand and ask them "On what factual basis do you claim that "income" is the subject of the tax?"

In another letter to respondent's counsel, dated May 4, 2000, petitioner states: "Provide me any documentation to support any claim that my services to Thunderbug did not have a fair market value of $29,264.00 and that the property that

Thunderbug gave me in return did not have a fair market value of $29,264.00. Provide me any documentation that you may have to show that 'income' is the subject of the tax."

This case was set for trial at the trial session of this Court commencing on June 19, 2000, in Honolulu, Hawaii (the 2000 trial session). Petitioner prepared a trial memorandum (the trial memorandum), as required by our standing pretrial order.[1] In the trial memorandum, petitioner claims that:

(1) "Based on advice from his professionals Petitioner challenges Respondent's claim that Petitioner has failed to comply with the law by not filing federal income tax returns."

(2) "Based on advice from his professionals Petitioner challenges Respondent's claim that petitioner is a 'taxpayer' as defined by I.R.C. § 1313(b) and 7701(A)(14)."

Attached to respondent's copy of the trial memorandum are documents purporting to be letters to petitioner from the aforementioned "professionals". The principal argument of those so-called professionals is that the filing and payment of taxes is voluntary.

At the call of the case from that calendar at the 2000 trial session, petitioner informed the presiding Judge, Judge Marvel, that he was attempting to hire an attorney to represent him.

---

[1] There is no copy of petitioner's trial memorandum in the record, but both parties describe it in their filings.

That attorney was Mr. Sulla (who, as stated, entered his appearance on June 21, 2000). In a subsequent telephone conference among Judge Marvel, Mr. Sulla, and respondent's counsel, Judge Marvel advised Mr. Sulla that, if petitioner continued to present frivolous arguments, the Court would impose penalties. The Court further advised Mr. Sulla that he bore the responsibility to straighten his client out. Petitioner's request for a continuance was granted.

By letter to respondent's counsel dated September 12, 2000, Mr. Sulla reviewed petitioner's arguments as to why he did not owe income tax for 1996. Those arguments include the following: (1) Petitioner had no income from any source taxable under the Internal Revenue Code; (2) no provision of the Internal Revenue Code obligates petitioner to file a Form 1040, U.S. Individual Income Tax Return, and, therefore, payment of the Federal income tax is voluntary, and (3) the Form 1040 provided by the Internal Revenue Service is a "bootleg" request because it does not conform to the requirements of the Paperwork Reduction Act of 1980, as amended, in that the form does not display a control number, an expiration date, or a statement whether the form is voluntary or mandatory. Mr. Sulla did not disavow those positions, but asked of respondent's counsel: "Any responses or interpretations, supported by authorities, which you would assert in opposition to the positions taken by [petitioner]".

On September 18, 2000, Mr. Sulla filed a status report with the Court advising the Court of petitioner's "newly-revealed" interpretation of the Internal Revenue Code and supporting regulations, i.e., that, under regulations interpreting section 861, "remuneration for services earned in the United States by a United States citizen from a United States employer was not an operative source of gross income under IRS [IRC] Section 61, and hence exempt income." Notwithstanding such new interpretation (hereafter, sometimes, the 861 argument), Mr. Sulla continued: "Petitioner does not want to waive or withdraw his two previously set forth arguments."

By letter to Mr. Sulla dated October 4, 2000, respondent's counsel advised Mr. Sulla that "the arguments presented by or on behalf of Mr. Takaba to date have been found to be frivolous."

By letter to Mr. Sulla dated February 5, 2001, respondent's counsel reiterated his advice that petitioner's arguments (including the 861 argument) were frivolous. He quoted from and referred Mr. Sulla to section 1.1-1(a), Income Tax Regs., which, in pertinent part, provides: "Section 1 of the Code imposes an income tax on the income of every individual who is a citizen or resident of the United States". He analyzed in detail the 861 argument, advising Mr. Sulla that he had misread section 861 and the associated regulations. He provided citations to cases rejecting the argument that the regulations under section 861

provide a tax exemption for U.S. source income of U.S. citizens, including Williams v. Commissioner, 114 T.C. 136 (2000), and Aiello v. Commissioner, T.C. Memo. 1995-40.  He quoted our statement in Williams v. Commissioner, supra at 138-139, that: "Petitioner's arguments are reminiscent of tax-protester rhetoric that has been universally rejected by this and other courts."  He also quoted that portion of our report in Aiello in which we refer to the position of the Court of Appeals for the Ninth Circuit:

> The Court of Appeals for the Ninth Circuit, to which any appeal in this case will lie, has stated, "Compensation for labor or services, paid in the form of wages or salary, has been universally held by the courts of this republic to be income, subject to the income tax laws currently applicable."  United States v. Romero, 640 F.2d 1014, 1016 (9th Cir. 1981).  * * *

He stated:  "Although you apparently understood our arguments in this case, you dismissed them as 'a normal response from a tax collector'.  But you provide no support for your interpretation of sections 61 and 861.  Please provide us with any cases supporting your position."  He warned Mr. Sulla that respondent would seek a penalty against petitioner under section 6673(a)(1) and was considering asking the Court to impose costs on Mr. Sulla pursuant to section 6673(a)(2).

Mr. Sulla reiterated the 861 argument in his declaration attached to petitioner's "Memorandum in Opposition to Motion for Summary Judgment and Motion for Damages" (sometimes, petitioner's

memorandum): "[T]he clear and unequivocal language contained under the several provisions of 26 CFR § 1.861 shows that the income of United States citizens from the remuneration of services from sources within the United States are not included as taxable or non-exempt income." The 861 argument is also contained in petitioner's memorandum of points and authorities in opposition to motion for summary judgment, which is signed by Mr. Sulla.

Also attached to petitioner's memorandum is petitioner's affidavit. Attached to the affidavit are Exhibits, including an Exhibit B, a letter to the Internal Revenue Service, dated April 11, 2001, in which, among other things, petitioner states:

> pursuant to the filing of the attached and completed IRS Form(s) I hereby challenge, controvert and/or refute any and all claims that I made any "wages" as defined in Title 26 United States Code(USC) § 3401(a) and/or that I received any remuneration from any source for the afore said year(s) that is includable in "gross income", as defined in the operative sections of the IRC as listed in Title 26 Code of Federal Regulations (CFR) § 1.861-8(f)(1). * * *

2001 Trial Session

At the 2001 trial session, Mr. Sulla attempted to show cause why we should not make absolute our orders sanctioning him and petitioner under section 6673(a). He attempted to show the good faith of his argument that the wages and interest received by petitioner in 1996 are exempt from Federal income taxation. He stated as a factual predicate for his argument that petitioner is

a citizen of the State of Hawaii, he worked in the State of

Hawaii, his employer is from the State of Hawaii, his employment

activity took place in the State of Hawaii, and he was paid in

the State of Hawaii. He agreed with the following summary by the

Court of his argument: "I take your argument to be that a United

States citizen, a resident of Hawaii, working in Hawaii for a

U.S. corporation, earning a salary or wages, is not taxable under

the Internal Revenue Code on that compensation as income, is that

your position?" He responded: "Yes, Your Honor. My position is

that it is intrastate income and that the Internal Revenue Code

does not reach intrastate income." He further explained: "I

can't find a constitutional power of Congress to tax that

[intrastate] income." He added:

> [I]n essence, Your Honor, I am stating that a U.S.
> person earning income from a U.S. source, whether it be
> interstate or intrastate, while he's in the United
> States, as long as it's not from a federal possessions
> corporation or a -- involved, or federal government
> involved, that would not be taxable income as defined
> and as stated in the regulations, Code of Regulations;
> and it would * * * be considered * * * exempt income.

He stated that he found support for his analysis in section 861

and the regulations thereunder. He agreed with the Court that

his analysis led to the conclusion that a vast amount of the

wages and interest paid to U.S. citizens and residents is not

taxable under the Internal Revenue Code. He conceded, however,

that he found no support for his reading of section 861 and the

regulations in any reported case. Indeed, he stated that he had

consulted a legal research firm that reported to him: "That they found no case, rule, or regulation addressing the argument that domestic and foreign source rules under Section 861, modify or limit the definition of gross income under Section 61."

## Discussion

### I. Introduction

By the motion for damages, respondent has asked that we impose a penalty on petitioner in the amount of $25,000, or in such lesser amount that we deem appropriate, pursuant to section 6673(a)(1). On our own, because of Mr. Sulla's advocacy of petitioner's positions in this case, we have ordered Mr. Sulla to show cause why we should not impose costs on him pursuant to section 6673(a)(2).

### II. Section 6673

In pertinent part, section 6673 provides:

SEC. 6673 SANCTIONS AND COSTS AWARDED BY COURTS

    (a) Tax Court Proceedings.--

        (1) Procedures instituted primarily for delay, etc.--Whenever it appears to the Tax Court that--

            (A) proceedings before it have been instituted or maintained by the taxpayer primarily for delay,

            (B) the taxpayer's position in such proceeding is frivolous or groundless, or

            (C) the taxpayer unreasonably failed to pursue available administrative remedies,

the Tax Court, in its decision, may require the
taxpayer to pay to the United States a penalty not
in excess of $25,000.

(2) Counsel's liability for excessive costs.

--Whenever it appears to the Tax Court that any
attorney or other person admitted to practice before
the Tax Court has multiplied the proceedings in any
case unreasonably and vexatiously, the Tax Court may
require--

(A) that such attorney or other person
pay personally the excess costs, expenses,
and attorneys' fees reasonably incurred
because of such conduct * * *

## III.  Discussion

### A.  Section 6673(a)(1) Liability of Petitioner

Respondent asks that we impose damages on petitioner under section 6673(a)(1) because petitioner "filed and maintained this action primarily for delay" and "his position * * * is frivolous or groundless."  Although disagreeing that he instituted or maintained these proceedings primarily for delay, petitioner virtually concedes that his initial arguments are frivolous: "Prior to Petitioner's counsel's entry, the Petitioner was maintaining several well known alleged 'tax protester' arguments in reliance upon professional opinions dating back to 1995."  We agree that petitioner's initial arguments are frivolous.  A taxpayer's position is frivolous if it is contrary to established law and unsupported by a reasoned, colorable argument for a change in the law.  E.g., Nis Family Trust v. Commissioner, 115

T.C. 523, 544 (2000). It is unclear to us whether petitioner is defending his initial arguments on the ground that, in good faith, he made those arguments in reliance on what he claims to be professional advice.[2] In any event, that reliance is unsubstantiated.

Petitioner relies on the 861 argument to defend against imposition of a section 6673(a)(1) penalty. The 861 argument is that the regulations under section 861 establish that petitioner's income in the form of remuneration for services and bank interest received from sources within the United States is not taxable income (or is not "non-exempt income"). The 861 argument is contrary to established law and, for that reason, frivolous. In Corcoran v. Commissioner, T.C. Memo. 2002-18, the taxpayer made a similar argument. We characterized the taxpayer's argument as "without factual or legal foundation", and addressed it as follows:

> Section 1 imposes an income tax on the income of every individual who is a citizen or resident of the United States. Sec. 1.1-1(a)(1), Income Tax Regs. Section 61(a) provides that except as otherwise provided in subtitle A (income taxes) gross income

---

[2] There is some question whether it is necessary for a court to find that a taxpayer acted in bad faith in order to impose a penalty on him under sec. 6673(a)(1)(B) for putting forth a frivolous or groundless position. Compare Branch v. I.R.S, 846 F.2d 36, 37 (8th Cir. 1988) ("A taxpayer's asserted good faith is not relevant to the assessment of frivolous return [sec. 6702] penalties.") with May v. Commissioner, 752 F.2d 1301, 1306 (8th Cir. 1985) ("showing of willfulness or lack of good faith is required [for section 6673(a)(1) damages]").

includes "all income from whatever source derived," including compensation for services and interest. Secs. 61(a)(1), (4).  * * *

Ignoring these statutory provisions, petitioners argue that their compensation for services * * * and interest do not constitute gross income because these items of income are not listed in section 1.861-8(f), Income Tax Regs. Their argument is misplaced and takes section 1.861-8(f), Income Tax Regs., out of context. The rules of sections 861-865 have significance in determining whether income is considered from sources within or without the United States.  The source rules do not exclude from U.S. taxation income earned by U.S. citizens from sources within the United States.  See, e.g., Williams v. Commissioner, 114 T.C. 136, 138-139 (2000) (rejecting claim that income is not subject to tax because it is not from any of the sources listed in sec. 1.861-8(a), Income Tax Regs.); Aiello v. Commissioner, T.C. Memo. 1995-40 (rejecting claim that the only sources of income for purposes of sec. 61 are listed in sec. 861); Great-West Life Assur. Co. v. United States, 230 Ct. Cl. 477, 678 F.2d 180, 183 (1982) ("The determination of where income is derived or 'sourced' is generally of no moment to either United States citizens or United States corporations, for such persons are subject to tax under section 1 and section 11, respectively, on their worldwide income.").

Petitioner's position, that respondent erred in determining a deficiency in, and additions to, petitioner's 1996 Federal income tax, is frivolous, since all of petitioner's arguments in support of that position are frivolous.  Petitioner deserves a penalty under section 6673(a)(1), and that penalty should be substantial, if it is to have the desired deterrent effect.  Cf. Talmage v. Commissioner, T.C. Memo. 1996-114 (text at n.5), affd. without published opinion 101 F.3d 695 (4th Cir. 1996).  The purpose of section 6673 is to compel taxpayers to think and to conform their conduct to settled principles before they file

returns and litigate. Coleman v. Commissioner, 791 F.2d 68, 71 (7th Cir. 1986); see also Grasselli v. Commissioner, T.C. Memo. 1994-581 (quoting Coleman).

We have set forth in some detail the various arguments made by petitioner during the course of this litigation. Petitioner has wandered far afield from the track established by the petition, that he had no income from any source subject to tax and is not required to file a return (themselves frivolous arguments). At various times, he has argued that the Sixteenth Amendment does not authorize Congress to tax his income, his services were worth what his employer paid him, the income tax is voluntary, he is not a taxpayer, and he did not receive any wages. He has asked respondent ridiculous questions and threatened to put respondent's agents on the stand and question them on their basis for claiming that income is subject to tax. He has delayed this case by asking for a continuance after having been warned accurately by respondent's counsel that his arguments were frivolous. He did not heed Judge Marvel's caution on the same point. On the basis of petitioner's activities in bringing and prosecuting this case, we shall make absolute our order to show cause by granting the motion for damages to the extent that we shall impose on petitioner a penalty under section 6673(a)(1) in the amount of $15,000.

B.  Section 6673(a)(2) Liability of Mr. Sulla

   1.  Introduction

Section 6673(a)(2) empowers us to impose costs on an attorney who has multiplied the proceedings in any case unreasonably and vexatiously.  Section 6673(a)(2) is a relatively new provision, having been added to the Internal Revenue Code by the Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec. 7731(a), 103 Stat. 2400.  Section 6673(a)(2) is derived from section 1927 of the Judicial Code, 28 U.S.C. sec. 1927 (1988). See H. Rept. 101-247, at 1399-1400 (1989).

In Harper v. Commissioner, 99 T.C. 533, 545 (1992), we noted the dearth of opinions interpreting and applying section 6673(a)(2), and relied upon case law under 28 U.S.C. sec. 1927 (1988) to ascertain the level of misconduct justifying sanctions. The language of 28 U.S.C. sec. 1927 (1988)[3] is substantially identical to that of section 6673(a)(2), and the two statutes serve the same purposes in different forums.  See Johnson v. Commissioner, 289 F.3d 452 (7th Cir. 2002), affg. 116 T.C. 111 (2001); Harper v. Commissioner, supra at 545.  The interpretation given section 6673(a)(2) and 28 U.S.C. sec. 1927 (1988) has historically been the same.

---

[3]  Title 28 U.S.C. sec. 1927 (1988) provides:  "Any attorney * * * who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

In Harper v. Commissioner, supra, we found that, while most Courts of Appeals require a finding of bad faith as a condition for imposing sanctions under 28 U.S.C. sec. 1927 (1988), a few have adopted the lower threshold of recklessness. Harper v. Commissioner, supra at 545-546. Among those few is the Court of Appeals for the District of Columbia Circuit. See Reliance Ins. Co. v. Sweeney Corp., 792 F.2d 1137, 1138 (D.C. Cir. 1986). The venue for appeal of the sanctions we imposed on Mr. Sulla may be to that Court of Appeals. See sec. 7482(b)(1) (second sentence). But compare Johnson v. Commissioner, supra (affirming Tax Court's imposition of section 6673(a)(2) liability without discussion of venue), with Dornbusch v. Commissioner, 860 F.2d 611 (5th Cir. 1988) (appellate venue lies in the Court of Appeals for the District of Columbia Circuit under the second sentence of section 7482(b)(1) in the case of an appeal of a criminal contempt sentence imposed on a witness by the Tax Court).[4] If the appellate venue for Mr. Sulla is not the Court of Appeals for the District of Columbia Circuit, it is likely the Court of Appeals for the Ninth Circuit. See sec. 7482(b)(1)(A). The Court of Appeals for the Ninth Circuit has occasionally stated that

---

[4] In Johnson v. Commissioner, 289 F.3d 452 (7th Cir. 2002), affg. 116 T.C. 111 (2001), the Court of Appeals for the Seventh Circuit may have been the appropriate venue for appeal pursuant to sec. 7482(b)(2), which allows an appeal to any U.S. Court of Appeals if agreed to in writing by the Secretary and the taxpayer.

sanctions under 28 U.S.C. sec. 1927 (1988) are appropriate where the attorney conduct multiplying the proceedings was reckless. B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1107 (9th Cir. 2002); Fink v. Gomez, 239 F.3d 989, 993 (9th Cir. 2001); United States v. Associated Convalescent Enters., Inc., 766 F.2d 1342 (9th Cir. 1985).  Because we are uncertain of appellate venue, and because we find that petitioner's counsel's conduct would constitute bad faith under the Court of Appeals for the Ninth Circuit cases applying a bad faith standard, e.g., In re Keegan Mgmt. Co., Sec. Litig., 78 F.3d 431, 436 (9th Cir. 1996), we shall, for purposes of this case (and without deciding the standard in this Court) (and without deciding the standard in this Court), adopt that standard.  See Nis Family Trust v. Commissioner, 115 T.C. at 548.

    2.  Bad Faith

    a.  Petitioner's Initial Arguments

In the view of the Court of Appeals for the Ninth Circuit, "bad faith" is present when an attorney knowingly or recklessly raises a frivolous argument.  In re Keegan Mgmt. Co., Sec. Litig., supra; Estate of Blas v. Winkler, 792 F.2d 858, 860 (9th Cir. 1986).  As discussed supra in section III.A., both petitioner's initial arguments and the 861 argument are frivolous.  We recognize that petitioner originally appeared in this case pro se.  Mr. Sulla appeared on June 21, 2000, at the time of the 2000 trial session.  At that time, he was advised by

Judge Marvel that the Court viewed petitioner's arguments as frivolous and that he bore the responsibility to straighten out his client. Mr. Sulla claims that, following his appearance, petitioner abandoned his initial arguments and relied exclusively on the 861 argument. Nevertheless, by letter to respondent's counsel dated September 12, 2000 (the September 12 letter), Mr. Sulla reviewed petitioner's initial arguments and did not disclaim them; indeed, he asked respondent's counsel to rebut them. In the status report filed by Mr. Sulla on September 18, 2000 (the status report), Mr. Sulla set forth the 861 argument. He also stated: "Petitioner does not want to waive or withdraw his two previously set forth arguments." In "Petitioner's Surreply to Respondent's Memorandum of Points and Authorities" (petitioner's final filing in this case (the surreply)), Mr. Sulla states:

> Any reservation of the Petitioner's prior arguments by Petitioner's counsel at that time while signaling to Respondent's counsel and to Court that Petitioner's counsel was informally conceding these arguments is not inconsistent. This <u>negotiating posture</u> by Petitioner's counsel at the initial contact with the Court and Respondent would normally be construed, among professionals in negotiations, as a strong signal of a parties' primary position. * * *

> A party may retain any number of different theories of action or defense "in reserve". The reservation of positions has no bearing on what the party ultimately corresponds, argues or pleads. * * * [Emphasis added.]

By the time of the September 12 letter and the status report, Mr. Sulla had ample time to review petitioner's initial arguments. We believe from Mr. Sulla's statements in the surreply that he knew those arguments were frivolous but, in order to gain a tactical advantage, did not disclaim them. Thus, Mr. Sulla knowingly maintained petitioner's frivolous arguments, and that constitutes bad faith.[5]

   b. The 861 Argument

Moreover, we believe that Mr. Sulla was reckless in making the 861 argument. The Court of Appeals for the Ninth Circuit has not defined the term "reckless" for purposes of determining whether an attorney acts in bad faith by recklessly making a

---

[5] Mr. Sulla's conduct with respect to petitioner's initial arguments (and, indeed, the 861 argument) also raises questions under the Rules. Rule 201(a) requires practitioners to carry on their practice in accordance with letter and spirit of the Model Rules of Professional Conduct of the American Bar Association (the Model Rules). In pertinent part, Model Rule 3.1 states: "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous". Model Rule 3.2 requires a lawyer to make reasonable efforts to expedite litigation. Model Rule 3.3 imposes on lawyers a duty of candor towards the tribunal, which includes the requirement that a lawyer not knowingly make a false statement of law to the tribunal. A comment following Model Rule 3.3 states: "Legal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal." We question whether Mr. Sulla's "negotiating posture" and his apparent advice to petitioner that he "reserve" his initial arguments violate Model Rules 3.1 and 3.2. We also question whether Mr. Sulla breached his duty of candor to the Court when, in the status report, he reported that petitioner would not waive or withdraw arguments that Mr. Sulla knew to be frivolous and was maintaining only to gain some negotiating advantage.

frivolous argument. "Recklessness involves a greater degree of fault than negligence but a lesser degree of fault than intentional wrongdoing." Black's Law Dictionary 1277 (7th ed. 1999). In certain areas of the law, scienter (the fact of an act's having been done knowingly) is an element of recklessness. See Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976). The Court of Appeals for the Ninth Circuit has not stated whether scienter is an element of recklessness for purposes of determining whether an attorney recklessly made a frivolous argument. It has, however, interpreted 28 U.S.C. sec. 1927 (1988) to require a finding of "subjective bad faith", e.g., B.K.B. v. Maui Police Dept., supra at 1107, which suggests that state of the mind, i.e., scienter, is an element. For guidance in making the necessary finding, we look to situations in which scienter is an element of a reckless false claim.

For a public official to recover damages for a defamatory falsehood relating to his official conduct, the official must prove that the statement was made with "'actual malice' that is, with knowledge that it was false or with reckless disregard of whether it was false or not". New York Times Co. v. Sullivan, 376 U.S. 254, 280 (1964) (emphasis added). Scienter is an element of such "reckless disregard": "The defendant must be proved to have subjectively 'entertained serious doubts as to the truth of his publication.'" Alioto v. Cowles Communications,

Inc., 519 F.2d 777, 779 (9th Cir. 1975) (quoting St. Amant v. Thompson, 390 U.S. 727, 731 (1968)).  Nevertheless, the Supreme Court has said that, in determining the existence of actual malice in a defamation action:  "[R]ecklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." St. Amant v. Thompson, supra at 732.  In the same paragraph, the Court also says that a defendant is not likely to prevail "when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation." Id.  The Court of Appeals for the Ninth Circuit has likewise determined that the scienter necessary to show "deliberate recklessness" in a civil securities fraud action is shown when the danger of misleading customers "'is either known to the defendant or is so obvious that the actor must have been aware of it.'" In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 975-977 (9th Cir. 1999) (quoting Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1569 (9th Cir. 1990), for definition of reckless conduct).  The reckless disregard inquiry appropriate for determining actual malice in a defamation action, like the deliberate recklessness inquiry appropriate in a civil securities fraud action, is an appropriate model for determining whether Mr. Sulla recklessly raised a frivolous argument, since common to all three inquiries

is scienter and a false (or, in the securities fraud context, misleading) statement.

We find that Mr. Sulla was reckless in making the 861 argument. We do so because (1) there were obvious reasons for Mr. Sulla to doubt his interpretation of the regulations and (2) the conclusions to be drawn from the 861 argument are so inherently improbable that only a reckless man would have made that argument. As stated, the 861 argument is that the regulations under section 861 establish that, although petitioner is a U.S. citizen, petitioner's income in the form of remuneration for services and bank interest received from sources within the United States is not taxable income (or is not "non-exempt income"). The most obvious reason for Mr. Sulla to doubt his interpretation of the regulations is that it is flatly contradicted by section 1.1-1, Income Tax Regs. In pertinent part, section 1.1-1, Income Tax Regs., provides:

SEC. 1.1-1 Income tax on individuals.--

(a) General rule. (1) Section 1 of the Code imposes an income tax on the income of every individual who is a citizen or resident of the United States * * *

* * * * * * *

(b) Citizens or residents of the United States liable to tax. In general, all citizens of the United States, wherever resident, * * * are liable to the income taxes imposed by the Code whether the income is received from sources within or without the United States. * * *

Mr. Sulla acknowledges the authority of Treasury Regulations. In Petitioner's Memorandum of Points and Authorities in Opposition to Motion for Summary Judgment (exhibit A to petitioner's memorandum), Mr. Sulla states: "When the Treasury regulations are published they become official notice to the public of what the law requires." In that same document, he quotes from section 1. Moreover, in respondent's counsel's letter to Mr. Sulla dated February 5, 2001 (the February 5 letter), respondent's counsel specifically directed Mr. Sulla to section 1.1-1(a), Income Tax Regs., and quoted a portion of that regulation. In the February 5 letter, respondent's counsel also advised Mr. Sulla that he had misread section 861 and the associated regulations, and he provided citations to cases rejecting the argument that the regulations under section 861 provide a tax exemption for U.S. source income of U.S. citizens. Mr. Sulla has indicated that he read those cases. He should not, therefore, have missed the fact that, in one of the cited cases, Williams v. Commissioner, 114 T.C. at 144, we penalized the taxpayer under section 6673(a)(1) for raising frivolous arguments, stating: "Petitioner's arguments concerning the underlying deficiency amount to tax protester rhetoric and are manifestly frivolous and groundless." Respondent's counsel asked Mr. Sulla to provide him with any cases supporting his position. Of course, Mr. Sulla did not do

so.  In fact, Mr. Sulla consulted a legal research firm and learned that there are no such cases.

Mr. Sulla may have dismissed respondent's arguments as "a normal response from a tax collector", but he cannot disregard authority that was placed in front of his eyes and that was plain to see.  We have no doubt that Mr. Sulla realized that there was some risk that the 861 argument was frivolous.  Such risk was apparent from the conclusion of the legal research firm that he consulted that no case, rule, or regulation supported the 861 argument.  We need not concern ourselves with the subjective valuation that Mr. Sulla placed on that risk.  It is sufficient that the risk was significant and plain to see, and that he saw it.  We need not concern ourselves with idiosyncratic thinking or tolerate willful obtuseness.  Cf. Coleman v. Commissioner, 791 F.2d 68, 72 (7th Cir. 1986).  Moreover, even if Mr. Sulla had not been presented with sufficient evidence contradicting the 861 argument, the 861 argument, on its face, is inherently improbable, because it leads to conclusions that defy common sense; i.e., U.S. citizens and residents earning income within the United States are taxable only on income earned from possessions, corporations, and the Federal Government, and the vast amount of wages and interest paid to U.S. citizens and residents is not taxable under the Internal Revenue Code.  We agree with what the Court of Appeals for the Tenth Circuit said

in <u>Charczuk v. Commissioner</u>, 771 F.2d 471, 475 (10th Cir. 1985), affg. T.C. Memo. 1983-433, before imposing costs on a taxpayer's counsel under 28 U.S.C. sec. 1927:  "Courts are in no way obligated to tolerate arguments that thoroughly defy common sense."  The conclusions to be drawn from the 861 argument thoroughly defy common sense.  We find that Mr. Sulla acted recklessly in making the 861 argument and, thus, he acted in bad faith.

### 3. <u>Unreasonable and Vexatious Multiplication of the Proceedings</u>

Mr. Sulla unreasonably and vexatiously multiplied the proceedings before the Court by championing petitioner's initial, frivolous arguments and by introducing a new frivolous argument, the 861 argument.  Either action is a ground to find him liable for excess costs.  This case should have concluded with petitioner's capitulation shortly after Mr. Sulla made his appearance.  Mr. Sulla's actions caused needless delay; if he caused additional expense to respondent, he should bear those additional expenses.  See <u>Cook v. Am. S.S. Co.</u>, 134 F.3d 771, 774 (6th Cir. 1998) (in the context of 28 U.S.C. sec. 1927).

Before proceeding to determine the excess costs that Mr. Sulla must bear, we pause to state that we are mindful that there can be a thin line between zealous advocacy and frivolity.  We must be careful not to cross that line and impose costs on zealous (but unsuccessful) advocacy.  We must be careful not to

stifle the enthusiasm or chill the creativity that is the very lifeblood of the law.  Edwards v. Commissioner, T.C. Memo. 2002-169 (quoting Greenhouse v. United States, 780 F. Supp. 136, 144 (S.D.N.Y. 1991)).  We do not intend by today's ruling to stifle the enthusiasm or chill the creativity of counsel in this Court.  Counsel, however, must reject arguments that he knows to be frivolous.  If he advances arguments that he knows, or should know, risk being dismissed as frivolous, he risks the imposition on him of the opposing party's excess costs.

### 4. Costs

"Attorney's fees awarded under section 6673(a)(2) are to be computed by multiplying the number of excess hours reasonably expended on the litigation by a reasonable hourly rate.  The product is known as the 'lodestar' amount."  Harper v. Commissioner, 99 T.C. at 549.  To assist us in computing the lodestar amount, respondent has provided us with the declarations of attorneys David L. Lau and Peter R. Hochman (the Lau and Hochman declarations, respectively).  Attached to the Lau declaration is a copy of respondent's internal time keeping records, showing the total time expended on this case by, among others, Messrs. Lau and Hochman.  In the Lau and Hochman declarations, Messrs. Lau and Hochman calculate their time, dating from Mr. Sulla's appearance, spent working on this case

and which each claims was due to Mr. Sulla's actions "vexatiously multiplying these proceedings" (excess hours).

Respondent asks reimbursement for 58 hours of Mr. Lau's time at $150 an hour. Mr. Lau is the attorney with day-to-day responsibility for the case. He is an attorney employed in the Office of Chief Counsel in Honolulu, Hawaii. He has been a member of the Hawaii State Bar since 1982. He has detailed the time he spent on the case from June 20, 2000, onward, which involves time spent on research, drafting, telephone calls, review of submissions to the Court, consultations with Mr. Hochman, and appearances. Based on various factors, including the cost of living and attorney wages in Honolulu, Hawaii, and awards in previous cases, respondent asks reimbursement at a rate of $150 an hour for Mr. Lau's time. The hourly rate properly charged for the time of a Government attorney is the "amount to which attorneys of like skill in the area would typically be entitled for a given type of work on the basis of an hourly rate of compensation." Harper v. Commissioner, 99 T.C. at 551. Mr. Sulla does not question the reasonableness of that rate. We do not, however, believe that 58 hours is the number of excess hours that Mr. Lau expended on this case. Respondent begins his computation of excess hours for Mr. Lau on June 20, 2000, adding 1 hour for time spent in preparing for and participating in a conference call with Judge Marvel and Mr. Sulla. Notwithstanding

that Mr. Sulla adopted and added to petitioner's frivolous arguments, thus unreasonably and vexatiously multiplying the proceedings in this case, we shall extend him the benefit of the doubt until such time as we are sure that he had adopted (and added to) petitioner's positions. We believe that we can safely say that he did so as of September 18, 2000, the date on which he filed the status report (advising the Court of the 861 argument and petitioner's failure to waive or withdraw his initial arguments). Mr. Lau declares that he spent 41 hours working on the case after that date. We are familiar with the procedural and factual history of this case and believe that 41 hours was reasonably necessary for Mr. Lau to do the work he described. See United States v. $12,248 U.S. Currency, 957 F.2d 1513, 1520 (9th Cir. 1991). We disagree with Mr. Sulla that some of the 41 hours in question are not excess hours because they are normal to any litigation. Petitioner's position is totally without merit, and this litigation should not have been continued 1 minute after Mr. Sulla familiarized himself with the facts. We find that $150 is a reasonable hourly charge for Mr. Lau's time and that he reasonably expended 41 excess hours on this litigation. The lodestar amount for Mr. Lau's time is $6,150.

Respondent asks reimbursement for 21.75 hours of Mr. Hochman's time, at a rate of $200 an hour. Mr. Hochman is Mr. Lau's supervisor. He is an Associate Area Counsel in the Office

of Chief Counsel in Honolulu, Hawaii. Mr. Hochman has been practicing law since at least 1982. Respondent asks reimbursement at a rate of $200 an hour for Mr. Hochman's time. Mr. Sulla does not question the reasonableness of that rate. All of the hours claimed for Mr. Hochman were expended after Mr. Sulla filed the status report. We believe that 21.75 hours was reasonably necessary for Mr. Hochman to do the work he described. We find that $200 is a reasonable hourly charge for Mr. Hochman's time and that he reasonably expended 21.75 excess hours on this litigation. The lodestar amount for Mr. Hochman's time is $4,350.

The total lodestar amount for the time of Mr. Lau and Mr. Hochman is $10,500. Respondent has not itemized costs for travel expense, photocopying, or supplies used in preparing the cases. Respondent limits his request for costs to the total lodestar amount. We shall require Mr. Sulla to pay costs in that amount.

5. Conclusion

We find that $10,500 is a reasonable amount for respondent's excess attorney's fees incurred by reason of Mr. Sulla's unreasonable and vexatious multiplication of these proceedings. Therefore, we shall make the order to show cause absolute and order Mr. Sulla personally to pay respondent $10,500 pursuant to section 6673(a)(2), that he make payment by means of a certified check, cashier's check, or money order in favor of the Internal

Revenue Service, that such payment be delivered to respondent's counsel at the Office of Chief Counsel in Honolulu, Hawaii, not later than 30 days from the date the order is served, and that respondent report to the Court if such payment is not timely received.

IV. <u>Conclusion</u>

To reflect the foregoing,

<u>An appropriate order will</u>
<u>be issued and an order and decision</u>
<u>will be entered</u>.