T.C. Memo. 2021-109

UNITED STATES TAX COURT

KARSON C. KAEBEL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16171-18P.                    Filed September 9, 2021.

Under I.R.C. sec. 7345(a), R certified P as an individual having a seriously delinquent tax debt.  P argues that, because R failed to send him statutory notices of deficiency in tax for five of the six tax years underlying R's certification, he owes no tax for those years and his remaining tax debt is not large enough to constitute a seriously delinquent tax debt.  P also argues that a right to international travel is a fundamental right and that we should declare unconstitutional a statute that allows or requires the Secretary of State to deny or take away an individual's passport for nonpayment of taxes.

Held:  P is precluded from arguing that R did not send him deficiency notices for the five years in question.

Held, further, R did not err in certifying that P has a seriously delinquent tax debt within the meaning of I.R.C. sec. 7345(b).

Held, further, we do not address the constitutionality of any action by the Secretary of State with respect to P.

**[\*2]**     _Held, further_, we will order P to show cause why we should not sanction him under I.R.C. sec. 6673(a) for advancing the groundless argument that R had not sent him deficiency notices.

Karson C. Kaebel, pro se.

Lisa P. Lafferty, for respondent.

MEMORANDUM OPINION

HALPERN, Judge:  Respondent has certified petitioner under section 7345 as an individual having a seriously delinquent tax debt.[1]  Petitioner challenges the certification as erroneous, arguing that, because respondent failed to send him statutory notices of deficiency in tax for five of the six tax years underlying respondent's certification, he owes no tax for those years and his remaining tax debt is not large enough to constitute a seriously delinquent tax debt.  He also argues that a right to international travel is a fundamental right and that we should declare unconstitutional a statute that allows or requires the Secretary of State to deny or take away an individual's passport for nonpayment of taxes.  Section

---

[1]Unless otherwise stated, all section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Dollar amounts have been rounded to the nearest dollar.

**[\*3]** 7345(e) establishes our jurisdiction to decide this case. We will sustain the certification.

## Background

### Introduction

The parties have submitted this case for decision without a trial pursuant to Rule 122. They have stipulated certain facts and certain documents. The facts stipulated are so found, and documents stipulated are accepted as authentic. Petitioner resided at "[street], Lewisville, Texas" (Lewisville address), when he filed the petition.

### Certification of Seriously Delinquent Tax Debt

Petitioner, a calendar-year taxpayer, filed no Federal income tax returns for 2005 through 2010 (delinquency years). On the basis of substitutes for returns, respondent determined deficiencies in, and additions to, tax for each delinquency year and assessed the amounts determined along with interest, and, as time passed, he assessed additional interest and additions to tax (all, without distinction, tax). Respondent's initial assessments for the delinquency years were as follows:

| Year | Date of assessment | Tax assessed |
|------|--------------------|--------------|
| 2005 | Apr. 25, 2011 | $25,500 |
| 2006 | Nov. 14, 2011 | 4,808 |
| 2007 | Nov. 14, 2011 | 52,721 |
| 2008 | Nov. 7, 2011 | 74,180 |
| 2009 | July 23, 2012 | 25,613 |
| 2010 | Oct. 14, 2013 | 27,523 |
| | Total | 210,345 |

[*4]

In July 2018, because virtually all assessments remained unpaid (some small portion had been collected by levy), respondent notified petitioner that he had certified him to the Secretary of State as an individual owing a seriously delinquent tax debt of $260,620.[2]

Prior Attempts at Collection

Lien Notice

Section 6321 establishes a lien for unpaid Federal taxes. Section 6323(a) provides that the lien shall not have priority against certain creditors until notice of the lien (notice of Federal tax lien (NFTL)) has been filed in a place specified in that section. Section 6320 provides that the Secretary shall notify the taxpayer in

---

[2]In pertinent part, sec. 7345(a) provides: "If the Secretary [of the Treasury] receives certification by the Commissioner * * * that an individual has a seriously delinquent tax debt, the Secretary shall transmit such certification to the Secretary of State for action". We have recognized that, in practice, the Secretary of the Treasury and the Commissioner have condensed those two steps into one. See Ruesch v. Commissioner, 154 T.C. 289, 292 n.3 (2020).

[*5] writing of the Secretary's filing of the NFTL and provide the taxpayer opportunity for a hearing (a "collection due process" (CDP) hearing).

In May 2013, respondent filed an NFTL with respect to petitioner's 2005 through 2009 tax liabilities, and in June 2013, he sent petitioner notice of same and an explanation of petitioner's right to a CDP hearing. In February 2014, respondent acted correspondingly with respect to petitioner's 2010 tax liability. Petitioner did not request a CDP hearing in response to either notice.

Levy Notice

Section 6331 provides that unpaid taxes may be collected by levy. Section 6330 provides for notice and the opportunity for a CDP hearing before levy. In November 2012, respondent sent petitioner a notice of intent to levy with respect to petitioner's 2005 through 2009 tax liabilities. Petitioner did not request a CDP hearing with respect to that notice. In February 2014, respondent sent petitioner a similar notice with respect to his 2010 liability. In response to that notice, petitioner did request a CDP hearing. Among his complaints was that, in pursuing collection of the tax, respondent had not complied with all proper procedures as required by law. Respondent accorded petitioner a CDP hearing, and, in July 2014, he sent to petitioner his determination to proceed by levy to collect petitioner's unpaid 2010 tax, stating, in part, that an Appeals Officer had verified that all legal and administrative requirements had been met.

[*6] Previous Tax Court Proceedings

Kaebel I

In August 2014, petitioner filed a petition challenging respondent's determination to proceed by levy to collect his unpaid 2010 tax.  Following a trial, we entered a decision sustaining the determination.  See Kaebel v. Commissioner (Kaebel I), T.C. Memo. 2017-37.  Petitioner's argument was that respondent's determination to proceed with the levy was erroneous because respondent could not prove that he had mailed a notice of deficiency for 2010 to petitioner before he proceeded with the levy.  We found that "[r]espondent [had] issued to petitioner a notice of deficiency dated June 3, 2013, determining a deficiency in petitioner's Federal income tax of $18,108 and additions to tax of $6,635.85 for 2010" and that "[t]he notice of deficiency was addressed to * * * [the Lewisville address,] * * * petitioner's last known address."  Id. at *2-*3, *6.

Kaebel II

In January 2018, petitioner filed another petition, disputing respondent's levies for all the delinquency years on the grounds that respondent was "trying to levy me without issuing * * * Notice[s] of Deficiency."  Rather than answering the petition, respondent moved to dismiss for lack of jurisdiction on the grounds that no notice of deficiency, NFTL, levy notice, or other notice for any of the delinquency years had been issued to petitioner that, in January 2018, could timely

[*7] be petitioned to the Tax Court. In support of his ground that petitioner could not in January 2018 timely petition deficiency notices for the delinquency years, respondent offered as evidence copies of deficiency notices for the delinquency years sent to petitioner at the Lewisville address and Postal Service Forms 3877 showing that the notices were mailed to that address on dates that precluded a timely petition in January 2018. Petitioner moved to strike those documents as inadmissible hearsay (motion to strike). By order dated July 26, 2018 (July 26 order), we denied the motion to strike and granted respondent's motion to dismiss for lack of jurisdiction. See Kaebel v. Commissioner (Kaebel II), T.C. dkt. No. 916-18 (July 26, 2018), aff'd per curiam, 770 F. App'x 726 (5th Cir. 2019). We recited in the July 26 order that "respondent has produced competent and reliable evidence that each of the deficiency notices for 2005 through 2010 was sent to petitioner at the * * * [Lewisville] address by certified mail on the postmarked date in the corresponding Form 3877 for that notice" (i.e., on dates ranging from December 13, 2010, to June 3, 2013). Id. dkt. entry No. 15, at 8.

The evidence established to our satisfaction that the petition in docket No. 916-18 was not timely with respect to any of the deficiency notices. "Consequently," we said, we "lack[ed] jurisdiction to redetermine a deficiency in petitioner's [income] taxes for those years." Id.

**[\*8]** Petitioner appealed the July 26 order. On appeal, the Court of Appeals for the Fifth Circuit affirmed, "find[ing] no clear error in * * * [our] determination that the notices of deficiency were properly mailed and that Kaebel's petition was filed long after the [90-day] deadline expired." Kaebel v. Commissioner, 770 F. App'x at 726-727.

Discussion

I.    Section 7345

Section 7345(a) provides that, if the Secretary of the Treasury receives certification by the Commissioner that a taxpayer has a "seriously delinquent tax debt," the Secretary shall transmit such certification "to the Secretary of State for action with respect to denial, revocation, or limitation" of the taxpayer's passport. A "seriously delinquent tax debt" is defined as a Federal tax liability that has been assessed, which exceeds $51,000,[3] which is unpaid and legally enforceable, and against which a lien notice has been filed or a levy has been made. Sec. 7345(b)(1). If a certification "is found to be erroneous or if the debt with respect to such certification is fully satisfied", the Internal Revenue Service (IRS) must

---

[3]Sec. 7345(b)(1)(B) requires that the liability be greater than $50,000. That amount is adjusted for inflation beginning in tax years after 2016. Sec. 7345(f). The adjusted amount for tax year 2018 was $51,000. See Rev. Proc. 2017-58, sec. 3.53, 2017-45 I.R.B. 489, 499.

**[*9]** reverse its certification and notify the Secretary of State and the taxpayer. Sec. 7345(c)(1), (d).

A taxpayer who has been notified of the certification may bring a civil action in District Court or may petition this Court "to determine whether the certification was erroneous or whether the Commissioner has failed to reverse the certification." Sec. 7345(e)(1). If this Court "determines that such certification was erroneous, then the [C]ourt may order the Secretary [of the Treasury] to notify the Secretary of State that such certification was erroneous." Sec. 7345(e)(2). "The statute specifies no other form of relief that * * * [this Court] may grant." Ruesch v. Commissioner, 154 T.C. 289, 294 (2020).

## II. Parties' Arguments

### A. Petitioner's Arguments

Petitioner assigns error to the certification. He avers: "The IRS never created, printed, or mailed me a lawful notice of deficiency." On brief, he concedes (apparently on the basis of Kaebel I) that he does owe some tax for 2010, but, with respect to the remaining five delinquency years (2005 through 2009), he argues that, because respondent failed to send notices of deficiency, respondent failed to comply with section 6212(a) and, as a result, he (petitioner) does not owe more than $51,000 in tax for the delinquency years (his tax debt for 2010 being less than that amount). Also, anticipating respondent's defense to his averment, he

**[\*10]** argues that he is not estopped from claiming that the IRS never created, printed, or mailed him deficiency notices for the delinquency years because, in Kaebel II, we never ruled on the motion to strike. He also argues that a right to international travel is a fundamental right and that we should declare unconstitutional a statute that allows or requires the Secretary of State to deny or take away an individual's passport for nonpayment of taxes.

B.     Respondent's Arguments

Respondent argues that petitioner was properly certified as an individual having a seriously delinquent tax debt. Responding to petitioner's averment that the IRS never created, printed, or mailed him deficiency notices for the delinquency years, respondent raises an affirmative defense--i.e., estoppel or issue preclusion--relying on findings that we made in Kaebel I and in Kaebel II that deficiency notices for the delinquency years were mailed to petitioner at the Lewisville address. Respondent argues that section 7345 does not infringe on petitioner's constitutional rights.

III.   Discussion

A.     Seriously Delinquent Tax Debt

Petitioner's first argument is that respondent's certification was erroneous because petitioner does not (and did not at the time of certification) owe more than $51,000 in unpaid tax. See sec. 7345(b)(1)(B). He does not deny that respondent

**[*11]** assessed $260,620 in unpaid tax or claim that respondent failed to accord him the CDP hearings in connection with the NFTLs and notices of intent to levy to which he was entitled. See sec. 7345(b)(1)(A), (C). His claim is that he owes no tax for 2005 through 2009 because respondent did not comply with the deficiency procedures specified in sections 6211 through 6216. In particular, he argues that, because respondent mailed no deficiency notices to him for those years, he owes no tax for the years. Whether or not there is legal merit to petitioner's argument, we need not consider the merits of his argument if respondent is right that petitioner is foreclosed from arguing that respondent did not mail him deficiency notices for 2005 through 2009 because petitioner is bound in this proceeding by our conclusion in Kaebel II that respondent did properly mail deficiency notices for those years.

Collateral estoppel is an affirmative defense. See Rule 39. Under the doctrine of collateral estoppel, or issue preclusion, once an issue of fact or law is "actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana v. United States, 440 U.S. 147, 153 (1979). Collateral estoppel is a judicially created equitable doctrine that protects parties from unnecessary and redundant litigation, conserves judicial resources, and fosters certainty in and reliance on judicial action. See, e.g., id.

**[\*12]** at 153-154; <u>Hiramanek v. Commissioner</u>, T.C. Memo. 2016-92, at \*11, <u>aff'd</u>, 745 F. App'x 762 (9th Cir. 2018). Collateral estoppel can be applied in the context of a factual dispute only when the following conditions are satisfied: (1) the issue in the second suit must be identical in all respects with the one decided in the first suit; (2) there must be a final judgment rendered by a court of competent jurisdiction; (3) the party against whom collateral estoppel is asserted must have been a party to the first suit or a privy to a party; (4) the parties must have actually litigated the issues and the resolution of these issues must have been essential to the prior decision; and (5) the controlling facts and applicable legal rules must remain unchanged from those in the prior litigation. <u>Peck v. Commissioner</u>, 90 T.C. 162, 166-167 (1988), <u>aff'd</u>, 904 F.2d 525 (9th Cir. 1990).

Petitioner attacks respondent's affirmative defense (estoppel) only with respect to the fourth of the five <u>Peck</u> conditions, i.e., whether, in prior litigation, he and the Commissioner had litigated the question of whether deficiency notices for the delinquency years had been sent to the Lewisville address and whether the issue was essential to decision in the prior litigation. Petitioner claims the issue was not litigated because the motion to strike--his attack in <u>Kaebel II</u> on the admissibility of the evidence that respondent would rely on to show that deficiency notices for the delinquency years were properly mailed--was not acted on by the

**[\*13]** Court.[4]  Petitioner is incorrect.  As reported <u>supra</u>, we denied the motion to strike in the July 26 order and dismissed the case for lack of jurisdiction in reliance on a record that established that respondent had mailed deficiency notices to petitioner for the delinquency years on dates that precluded any current redetermination of the deficiencies.

Kaebel I was a decision on the merits, sustaining respondent's determination to proceed by levy to collect petitioner's unpaid 2010 tax.  We sustained the determination because we found that respondent <u>had</u> issued petitioner a deficiency notice for 2010.  That finding was essential to our decision and could, if it were necessary, support a claim of issue preclusion.  <u>Kaebel II</u> was not a decision on the merits.  We dismissed the case for lack of jurisdiction.  We relied in part on our finding that respondent had properly mailed petitioner deficiency notices for all the delinquency years to conclude that we lacked jurisdiction.  A dismissal for lack of jurisdiction precludes relitigation of issues essential in ruling on the jurisdictional question.  See <u>Nat'l Ass'n of Home Builders v. EPA</u>, 786 F.3d 34, 41 (D.C. Cir. 2015) ("Issue preclusion applies to threshold jurisdictional issues like standing as well as issues going to a case's merits."); <u>Waltner v. Commissioner</u>, T.C. Memo. 2014-133, at \*16-\*17, <u>aff'd in part</u>, 748 F. App'x 162 (9th Cir. 2019); 18A Charles

---

[4]In making that argument, petitioner confuses <u>Kaebel I</u> and <u>Kaebel II</u>, attributing his motion to strike to the former when, in fact, he made it in the latter.

[*14] A. Wright & Arthur R. Miller, Federal Practice and Procedure, sec. 4436 (2d ed. 2008).  Petitioner appealed our decision dismissing his petition for lack of jurisdiction to the Court of Appeals for the Fifth Circuit.  The Court of Appeals affirmed, finding no error in our determination that the notices of deficiency were properly mailed and that the petition in Kaebel II was untimely.  Kaebel v. Commissioner, 770 F. App'x at 726-727.  Petitioner is precluded from arguing that respondent failed to send him deficiency notices for 2005 through 2009.

The record shows that in July 2018 respondent met the criteria to certify that petitioner had a seriously delinquent tax debt.  Between April 2011 and November 2013, respondent had assessed over $210,000 in tax, and petitioner's liability undoubtedly exceeded $51,000, see table supra p. 4, when petitioner's rights to CDP hearings on account of the NFTL and levy notices either lapsed or, for 2010, were exhausted.  That is all that was required for respondent to have certified petitioner as having a seriously delinquent tax debt.  We see nothing erroneous in the certification and so hold.

B.    Fundamental Right To Travel

Petitioner argues that a right to international travel is a fundamental right and that taking an individual's passport because of a tax debt is unconstitutional. He prays the Court: "[D]eclare the statute that allows requires [sic] the State

[*15] Department to deny a passport or take away Petitioner's passport for non-payment of taxes as unconstitutional."

Congress enacted section 7345 in 2015 as part of the Fixing America's Surface Transportation (FAST) Act, Pub. L. No. 114-94, section 32101, 129 Stat. at 1729. Section 7345 describes the first of two discrete sets of actions by two separate groups of actors necessary to revoke or deny a passport in the case of certain unpaid taxes. Upon receipt by the Secretary of the Treasury from the Commissioner of a certification that an individual has a seriously delinquent tax debt, the Secretary of the Treasury must transmit the certification to the Secretary of State, who "act[s] with respect to denial, revocation, or limitation of a passport pursuant to section 32101 of the FAST Act." Sec. 7345(a). FAST Act section 32101(e), 129 Stat. at 1732, provides the Secretary of State the authority to deny or revoke a passport. The Secretary of State is permitted, in his discretion, to revoke a passport that has already been issued. And he is prohibited from issuing a new passport or renewing an expiring one, although the prohibition is not absolute. He retains discretion to issue a new passport or renew an expiring one "in emergency circumstances or for humanitarian reasons". FAST Act sec. 32101(e)(1)(B). In Rowen v. Commissioner, 156 T.C. __, __ (slip op. at 16-17) (Mar. 30, 2021), we said: "In short, the actions of the Commissioner, the Secretary of the Treasury, and the Secretary of State are governed by separate and distinct rules, which impose

**[*16]** different responsibilities on each and grant them varying degrees of discretion in carrying out those responsibilities."

In <u>Rowen</u>, we found meritless the taxpayer's claim that "§ 7345 is unconstitutional * * * because it prohibits international travel[,] * * * a fundamental right enshrined in the Fifth Amendment". <u>Id.</u> at __ (slip op. at 18). "Section 7345", we explained, "simply does not authorize any passport-related decision and therefore does not prohibit international travel." <u>Id.</u> at __ (slip op. at 19). We added: "[A] statutory provision (section 7345) that merely provides for the certification of certain tax-related facts and does not restrict in any manner the right to international travel cannot run afoul of * * * the Fifth Amendment." <u>Id.</u> at __ (slip op. at 21). We offered no opinion on the constitutionality of the authority granted to the Secretary of State by FAST Act section 32101(e). <u>Id.</u> at __ (slip op. at 22).

To the extent that petitioner's constitutional challenge is to section 7345, <u>Rowen</u> is dispositive, and we reject that challenge. To the extent that his constitutional challenge is to any action by the Secretary of State pursuant to FAST Act section 32101(e), we will not address that challenge. The parties have stipulated facts, and neither the stipulation nor the pleading make any mention of any action by the Secretary of State, nor, indeed, do they tell us whether petitioner has, or wants, a passport (although it is a fair assumption that one or the other is

**[\*17]** true, or why would he have commenced this action?). We have no call even to consider whether, were such facts before us, our jurisdiction under section 7345(e) extends to considering any action by the Secretary of State.

IV.    Section 6673 Sanction

This is the third proceeding before this Court and the fourth altogether, see Kaebel v. Commissioner, 770 F. App'x 726, in which petitioner has claimed that deficiency notices for one or all the delinquency years were not properly mailed. It should have become clear to petitioner, at least after the Court of Appeals in Kaebel II affirmed our rejection of his claims, that those claims lack merit. He has in this proceeding occupied the time of respondent's counsel and this Court needlessly with his claims that deficiency notices for the delinquency years were not properly mailed.

In pertinent part, section 6673(a)(1) allows us to impose a penalty of up to $25,000 if (1) the taxpayer has instituted or maintained proceedings before the Tax Court primarily for delay or (2) the taxpayer's position in the proceeding is frivolous or groundless. "Groundless" means "lacking a basis or rationale". Black's Law Dictionary 772 (9th ed. 2009). Also, "[t]he purpose of section 6673 is to compel taxpayers to think and to conform their conduct to settled principles before they file returns and litigate." Takaba v. Commissioner, 119 T.C. 285, 295 (2002). Given the public policy interest in deterring the abuse and waste of

**[\*18]** judicial resources, the authority of the Court to impose a penalty and decide in what amount is broad.  See Leyshon v. Commissioner, T.C. Memo. 2015-104, at \*24, aff'd, 649 F. App'x 299 (4th Cir. 2016).  We may impose the penalty even where taxpayers have raised some issues that were neither frivolous nor groundless, along with issues that were frivolous or groundless.  See, e.g., Smith v. Commissioner, T.C. Memo. 2021-29, at \*39.

Before entering decision in this case, we will order petitioner to show cause why we should not in our decision include a penalty for advancing a groundless position.  See sec. 6673(a)(1)(B).

An appropriate order will be issued.